**In re the MARRIAGE OF Rose G. HAYNE and Robert A. Hayne.**

**Upon the Petition of Rose G. Hayne, Petitioner-Appellant,**

**and Concerning Robert A. Hayne, Respondent/Cross-Appellant.**

**No. 2–68304.**

Court of Appeals of Iowa.

April 8, 1983.

Linda L. Haley of Williams & LaMarca, West Des Moines, for petitioner-appellant.

William F. Fanter and Michael Figenshaw, of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for respondent/cross-appellant.

---

OXBERGER, Chief Judge.

Petitioner-wife appeals and respondent-husband cross-appeals from the decree implementing economic provisions of the parties' 1979 dissolution decree and deciding matters relating to alimony and attorney's fees. Petitioner-wife asserts: (1) that the alimony award was inadequate; (2) that alimony should not have been made terminable upon the husband's death; (3) that the permanent alimony award should have been made retroactive to the 1979 date of entry of the parties' dissolution decree; (4) that the implementation of the stipulation incorporated in the 1979 decree was inequitable; and (5) that she should be awarded additional attorney fees for both the trial and this appeal. Respondent-husband asserts: (1) that the implementation of the stipulation incorporated in the 1979 decree was inequitable; (2) that the alimony award was excessive and should be terminated upon his retirement; and (3) that the wife should not have been awarded attorney fees. Petitioner-wife replies: (1) that the husband's first two issues on cross-appeal should be deemed waived pursuant to Iowa R.App.P. 14(a)(3) for failure in the brief to state, argue, or cite authority; and (2) that the husband's argument that alimony should terminate upon his retirement should be deemed waived when not specifically presented to the trial court.

This is an appeal from the financial provisions of the decree implementing a stipulation entered into at the time of the parties' dissolution of marriage. Petitioner Rose G. Hayne filed a petition for dissolution of marriage on November 3, 1977. On October 25, 1978, the trial court awarded her temporary support of $2,500 per month. The marriage was dissolved in July, 1979, with the trial court retaining jurisdiction for the purpose of determining the issues of alimony, attorney's fees, and the implementation of a property stipulation which was entered into at the time of the dissolution.

The stipulation provided, in essence, that the parties would divide their property, with about 56 percent to respondent and 44 percent to petitioner. Included with the stipulation were a balance sheet, a schedule of assets, and a schedule of art works and stocks and bonds. The stipulation was incorporated in the decree of dissolution. Pe-

titioner's application some months later that the stipulation be partially set aside on the ground that the balance sheet was inaccurate and incomplete and on the further ground that petitioner was under severe psychological stress at the time it was entered into was denied.

The parties were unable to agree to the implementation of the stipulation, and the matter came on for hearing in June, 1981. The court entered its initial findings of fact and conclusions of law on November 6, 1981, awarding petitioner a lump sum property settlement of $107,400 and permanent alimony of $4,000 per month. After hearing arguments on a petition for a new trial, the court, on January 29, 1982, modified its decree by awarding petitioner a lump sum of $142,842 as well as certain other property, and $4,000 per month permanent alimony until the death of either party or until petitioner remarries. Petitioner was also awarded $25,000 toward her attorney fees.

The parties were married briefly in 1943, divorced, and remarried in 1945. Prior to their marriage, neither party had any significant wealth. Respondent was beginning his career as a neurosurgeon, and petitioner had completed two years of liberal arts education and two and one-half years of nurse's training.

With the exception of one brief interval during which petitioner served as a private duty nurse, she did not work outside the home, but devoted her time to raising and caring for five children, all of whom are now grown and completed their college educations.

During the later years of their marriage, the parties enjoyed an affluent life-style. In addition to a nice home, fine clothes and jewelry, frequent travel in first-class facilities, and the like, the parties accumulated a fine collection of paintings and scrimshaw. In 1980, respondent's income was $240,000 net.

I. Scope of Review

■ Since this is an action in equity, our review is de novo. Iowa R.App.P. 4.

II. Alimony

■ Petitioner asserts that the permanent alimony awarded to her was inadequate in light of all relevant circumstances. The criteria to be considered are those enumerated in Schantz v. Schantz, 163 N.W.2d 398 (Iowa 1968), as modified by In re Marriage of Williams, 199 N.W.2d 339 (Iowa 1972). See also In re Marriage of Beeh, 214 N.W.2d 170, 174 (Iowa 1974); Iowa Code § 598.21(3) (1981).

At the time of trial, petitioner was fifty-seven years of age and respondent was sixty-six years of age. Both parties were in reasonably good health. Both parties contributed significantly and made many sacrifices in order to further their marital interests. They were married for thirty-four years prior to the dissolution in 1979. Petitioner has no source of income other than that provided by respondent and that which she might realize from the property settlement. Both parties are accustomed to a very comfortable, if not lavish, standard of living.

Petitioner complains that while she was subsisting on $2,500 monthly temporary alimony, she had trouble making ends meet. She says that she was unable to have her car repaired or to replace it, that she had to travel by bus, that she had to borrow money from one of her attorneys to buy groceries, that she was unable to have the furnace and roof of her home repaired, that she was unable to buy nice gifts for her children, that she could not afford to entertain her friends, and that she had to borrow money from one of her sons to pay her bills. She complains also that whereas she had been accustomed to nice meals at the Des Moines Club, she now had to eat at a local dime store. She was also unable to indulge her interest in art by adding to her collection or even maintaining the collection that she had. She feels that she was living with financial insecurity and that her standard of living was a far cry from that to which she had become accustomed.

We note that petitioner is no longer required to subsist on $2,500 per month alimo-

ny, since respondent has been ordered to pay her $4,000 per month.

Petitioner argues further that it is grossly inequitable that she should have been awarded only 20 percent of respondent's adjusted gross income as alimony, particularly when considering the fact that alimony payments are deductible to respondent and constitute taxable income to petitioner. Petitioner urges us to award alimony on the same 56–44 formula used in the property settlement.

Petitioner's argument rests upon the assumption that after many years of marriage, during which a husband and wife have shared the husband's income equally and enjoyed the fruits of his labors, the wife is entitled to no less than half, or at least close to half, of his anticipated future income by way of alimony should their marriage be dissolved. We reject that assumption. Nowhere in our law is such a principle recognized. Nor do the principles of equity countenance such a view.

The equitable principles that we have recognized and enforced in the past require, in dissolution cases, that the spouse with the lesser earning capacity is entitled to be supported, for a reasonable time, in a manner as closely resembling the standards existing during the marriage as possible, to the extent that that is possible without destroying the right of the party providing the income to enjoy at least a comparable standard of living as well. But once the dependent spouse's standard of living is assured, there is no reason, in equity, for the supporting spouse to provide still more.

On the contrary, as a matter of public policy, we believe that it is not desirable to do so; and we are convinced also that such an approach would be inequitable as well. Those who possess valuable skills are recompensed by society for the efforts they put forth. The imposition of an onerous burden diminishes the incentive of otherwise productive individuals to spend their time and energy in useful pursuits. Whether an individual is a neurosurgeon or in a high-paid profession, he is entitled to enjoy the rewards of his labors.

■ Thus, we conclude in the instant case that there was no inequity in the trial court's determination that the petitioner should receive $48,000 per year in permanent alimony, even if that leaves the respondent a surplus considerably above $48,000 per year for his own use.

■ The home in which petitioner resides is large and financially demanding. Expenses for mortgage, insurance, taxes, utilities, and maintenance, including a cleaning lady and outside maintenance, amount to $1850 per month. This is unquestionably a heavy burden for her to carry. However, it is one which she need not carry unless she chooses to do so. If she were to sell the residence, she would realize about $90,000. Since she is living alone, she could find a residence that would not be so draining upon her. She is, of course, entitled to reside wherever she pleases. If she chooses to remain in her home, it is evident that she will have to cut corners elsewhere.

In view of the substantial assets awarded to her by the decree, she should be able to live in reasonable comfort with the income she may realize from them and the $48,000 per year she receives in alimony.

We do not find that the alimony award was inequitable.

### III. Cessation of Alimony Upon Respondent's Death

■ The court ordered that the alimony award would continue until petitioner's remarriage or until the death of either party. Petitioner claims that under the circumstances of this case, alimony should be a charge against respondent's estate in case he predeceases her.

In general, alimony payments are presumed to terminate upon the obligor's death, absent a provision in the decree requiring that the payments continue after such death. *In re Roberts' Estate,* 257 Iowa 1, 131 N.W.2d 458 (1964). There have been cases in which an award of alimony that was made a charge against the husband's estate has been upheld. *See, e.g., In re*

*Marriage of Seidenfeld,* 241 N.W.2d 881 (Iowa 1976); *In re Marriage of Beeh,* 214 N.W.2d 170 (Iowa 1974).

■ Petitioner was awarded substantial assets in the property division. These include a home appraised at $140,000, an art collection appraised at $56,600, home furnishings appraised at $29,700, and a cash settlement of $142,842 plus 10 percent interest from November 12, 1981. This amounts to a total of over $369,000. In addition, she is receiving $48,000 per year in alimony. Most of these assets should appreciate in value over the years. Wise preservation and investment of her cash assets and surplus income, if any, should be sufficient to enable her to subsist in reasonable comfort, even if respondent should predecease her.

We see no reason to disturb the court's conclusion that respondent's obligation to support petitioner shall terminate upon his death.

### IV. Retroactivity of Alimony Award

■ Petitioner argues that the permanent alimony award should have been made retroactive to the date of the dissolution, with interest thereon from that date, and that the trial court's failure to do so constituted abuse of discretion.

It is not unusual for increases in support awards to be made retroactive. *See, e.g. Willcox v. Bradrick,* 319 N.W.2d 216, 219 (Iowa 1982); *Spaulding v. Spaulding,* 204 N.W.2d 634, 636 (Iowa 1973). However, saying that a court *may* order higher support payments to be paid retroactively is not the same saying that it *must* do so. We find no abuse of discretion in the court's determination in the instant case that the increased alimony award be prospective only.

### V. The Property Stipulation

■ Petitioner argues that the court had no authority to add to or delete from the balance sheet that was agreed to by the parties and found by the court to constitute an equitable distribution of the property, and "fair and reasonable and justified under all circumstances."

Respondent, on the other hand, points out that the stipulation and decree contain no dispositive provisions as to who gets what, other than the house. Although the stipulation sets specific values upon various items of property owned by the parties, and provides a formula for distribution of that property, it does not provide details as to how that property shall be distributed between the parties. Respondent concludes, therefore, that it was left to the court at the later hearing to determine how the property should be disposed of. Thus far, we agree with respondent.

However, respondent goes on to complain about the manner in which the court evaluated various items in the stipulation. More specifically, he argues that the court should have recognized the diminution in the stock portfolio that had occurred between the date of the stipulation and the date of trial; that it should have decreased the value of respondent's Keogh plan because of potential tax liability if it were terminated; and that it should have depreciated the value of respondent's office equipment, furniture, and fixtures.

We find that it was not unreasonable for the court to make certain adjustments where it was shown assets having substantial value had been overlooked, just as it was not inappropriate for the court to delete items which were enumerated more than once in the stipulation. Such modifications are not a modification of a judgment, since no judgment as to the details of property distribution had yet been entered. Errors or omissions might properly be corrected at trial. The stipulations and events subsequent to the stipulations, such as increases or decreases in the value of stocks and other assets, are factors the court examines in exercising its ultimate function in such cases—*i.e.,* making an equitable division of the marital property. In any event, the trial court found that respondent had control over these assets and could have invested them as he pleased; and the court did not depreciate respondent's office equipment and furniture because it did not de-

preciate petitioner's household goods and furniture. We find that there was no abuse of discretion on the part of the court relative to this matter and that the property division is equitable, and therefore reject the arguments of both parties.

## VI. Respondent's Cross-Appeal

On cross-appeal, respondent argues (1) that the trial court erred in its implementation of the property stipulation by failing to depreciate the value of respondent's office equipment, furniture, and fixtures; by failing to decrease the value of his Keogh plan because of potential tax liability; and by failing to recognize the diminution of the stock portfolio that occurred between the time of the stipulation and the trial. In addition, he argues (2) that the court erred in awarding the petitioner an excessive amount of alimony and in extending the duration of that award beyond the date of respondent's retirement and (3) that the court erred in ordering respondent to pay petitioner's attorney fees.

■ We have already dealt with the property division in Division V of this opinion. Although liquidation of respondent's Keogh plan would have entailed certain tax liabilities, the court did not order him to liquidate his plan, and it is evident that respondent had other assets available to meet the court's orders without liquidating it. It was no error for the court to consider the full value of the Keogh plan without figuring in the potential tax liability upon liquidation when determining the value of marital property for division under the terms of the decree. We have already pointed out that consideration of such factors as depreciation and increases or declines in the value of property during the pendency of a case is within the sound discretion of the court as it strives to arrive at an equitable disposition of the matter.

■ In division II of this opinion, we gave our reasons for concluding that the alimony award is equitable under all the circumstances of this case. Since petitioner has no source of support other than the alimony respondent has been ordered to pay, and since she has reached an age at which it would be difficult, if not impossible for her to find suitable employment, we do not find that the court erred in ordering respondent to continue to pay alimony after his retirement. If his circumstances following his retirement are such that he is no longer able to afford to support petitioner at that level, he may then petition the court for a suitable modification of the decree.

We deal with the question of attorneys fees in the next division of this opinion.

## VII. Attorneys Fees

■ Petitioner seeks to have the award of $25,000 for attorney's fees which respondent was ordered to pay increased. Respondent was also ordered to pay court costs. The controlling factor in an award of attorney's fees is the ability of the respective parties to pay, depending upon the financial circumstances and earnings of each. *In re Marriage of Williams,* 303 N.W.2d 160, 167 (Iowa 1981).

■ In view of the ability of each of these parties to pay, we are not inclined to disturb the ruling of the trial court.

Petitioner has requested attorney fees incurred in this appeal. Such an award depends upon the relative financial circumstances of the parties. *In re Marriage of Burham,* 283 N.W.2d 269, 278 (Iowa 1979). Without directing how much petitioner's attorneys may charge, we order respondent to pay $7,500 toward that obligation.

The trial court's decree is affirmed in all respects.

AFFIRMED.