In re the **MARRIAGE OF Ruth Helen VINE and Donald Raymond Vine.**

**Upon the Petition of**

**Ruth Helen Vine, Appellee,**

**And concerning**

**Donald Raymond Vine, Appellant.**

**No. 88–1237.**

Court of Appeals of Iowa.

Aug. 23, 1989.

140

Mark D. Buchheit, West Union, for respondent-appellant.

Calvin R. Anderson of Anderson, Wilmarth & VanDerMaaten, Decorah, for petitioner-appellee.

Considered by DONIELSON, P.J., and HAYDEN and HABHAB, JJ.

HABHAB, Judge.

Donald Raymond Vine (Donny) appeals various economic provisions of the district court's decree dissolving his marriage to Ruth. He contends (1) the trial court inequitably divided the marital property; (2) the trial court erred by not considering the tax consequences to each party; (3) the trial court should have informed appellant of the benefits of having counsel at the hearing; (4) the trial court erred in accepting and relying upon the testimony of appellee's expert witness, Richard Lomen; (5) the trial court erred in failing to advise appellant of the advantages of an independent appraisal of the parties' property; (6) the trial court erred in accepting and relying upon a financial statement prepared by appellant as part of a loan application; (7) the decree is ambiguous as to certain provisions; and (8) the trial court erred in awarding alimony to Ruth. Donny also seeks attorney fees for this appeal. We affirm as modified.

The parties, Donny and Ruth Vine, were married in 1961. Both of their children are now adults. At the time of trial, Ruth was forty-nine years old. She is a high school graduate. For twenty years, she milked and cared for the parties' dairy herd. In 1986, the parties sold their dairy herd and entered into the U.S.D.A. dairy herd buy-

out program. Since October of 1987, she has been employed as an inspector in an engraving works earning a net income of $183 per week.

Donny farmed during the marriage and has operated an auction business for the past ten to twenty years. In 1983, the auction business yielded a net profit of $7,123. In 1984, the business showed net profits of $4,820. The business's net profits for 1985 were $29,965. It lost $5,087 in 1986 and rebounded to yield $7,438 in 1987. The average net profit of the business for the years 1983 through 1987 was $8,851.80.

The decree awarded Ruth the following property:

1. The parties' 120–acre dairy farm (the home farm), together with all growing crops;

2. A 1981 Oldsmobile 98;

3. All bank accounts in her name alone;

4. All life insurance policies on her life and respondent's life in which she is named as the owner;

5. All clothing, household goods, furniture, appliances, and jewelry in her possession;

6. A Lawn Boy mower and John Deere riding lawn mower;

7. All payments due from the U.S.D.A. on the dairy herd buy-out program;

8. A mutual fund account;

9. Principal Financial Group Life Insurance Policy # 2565182.

The decree also directed Donald to pay Ruth alimony in the sum of $100 per month for twenty-four months.

The decree awarded Donald:

1. The parties' 50–percent interest in a 100–acre farm (Sess farm); together with all growing crops;

2. All bank accounts in his name alone;

3. All auction equipment;

4. A 1980 Oldsmobile 98;

5. A 1982 Chevrolet pickup;

6. A 1964 Ford;

7. A 1969 Buick;

8. A 1979 Oldsmobile

9. All payments due from the U.S.D.A. on the C.R.P. Program on the Sess farm;

10. All Life Investors Annuity and Life policies in his name; and all Principal Financial Group Policies not awarded to petitioner;

11. Any income tax refunds due for 1987 and the prior years;

12. All clothing, household goods, furniture, appliances, and jewelry in his possession.

Ruth was to be responsible for her attorney fees, the mortgage on the home farm, and a fertilizer bill with the co-op. Donny was to be responsible for the parties' share of the mortgage on the Sess farm, the parties' income taxes for 1987, as well as any interest and penalty, all loans due in the insurance policies to him, and other loans totaling $1,389.11. Unfortunately, the trial court failed to assess a value to any of the parties' assets in its decree. Therefore, we shall have to endeavor to perform such an evaluation, to the extent possible from the record before us, in order to determine the equity of the distribution of assets.

The decree, at paragraph four, also provided for the following:

All remaining farm machinery, equipment, livestock, feed and grain (except for crops now growing in the field) as listed on pages 1, 2, 3, and 5 of respondent's statement of affairs filed July 6, 1988, are awarded to the parties in equal shares.

These items shall be sold by the parties by mutual agreement, within 90 days of the date of this decree, and the proceeds paid as follows in this order of priority:

(a) To expenses of sale;

(b) To Waukon State Bank, to be applied first on operating loans and next to real estate loan on home farm;

(c) To Waukon Equity Co-op for fertilizer used on home farm for 1988 crop year;

(d) To the parties in equal shares.

We review de novo. Iowa R.App.P. 4. We give weight to the trial court's findings of fact, but we are not bound by them. Iowa R.App.P. 14(f)(7).

## I.

■ Each partner in the marriage is "entitled to a just and equitable share of the property accumulated through their joint efforts." *In re Marriage of Havran*, 406 N.W.2d 450, 452 (Iowa App.1987). We find that the trial court awarded Ruth approximately $156,290 in assets,[1] the principal asset being the home farm, which we value at $132,000.[2] Set against these assets, Ruth was to be responsible for $94,777 in debts, plus her attorney fees. This left her with a net distribution of approximately $61,513. Donny received assets worth roughly $60,080, and was to be responsible for $24,525 in debts.[3] Thus, Donny's net distribution was $35,561.

■ What makes the district court's award inequitable is the distribution provisions contained in paragraph four of the decree. Donny valued the assets to be distributed under that paragraph at $98,-175.[4] Ruth valued these same assets at only $32,900. However, the debts which the proceeds of the sale were to be first applied totaled over $105,800, $94,777 of which were debts for which Ruth was responsible. Even under Donny's figures, the debts would consume all of the proceeds of the sale. The net effect of this paragraph was to reduce Ruth's debt load by the amount of the sale of these assets. Such a result is inequitable under the facts of this case.

We conclude that Ruth shall be solely responsible for the mortgage on the home farm, the operating loans at the Waukon State Bank, and the Waukon Equity Co-op Fertilizer bill. After the expenses for the sale of these assets are subtracted, the proceeds shall be divided equally between the parties. The trial court's distribution of assets and debts is otherwise affirmed.

## II.

■ Donny challenges the awarding of alimony to Ruth. When determining the appropriateness of alimony, the court must consider (1) the earning capacity of each party, and (2) their present standard of living and ability to pay balanced against their relative needs. *In re Marriage of Estlund*, 344 N.W.2d 276, 281 (Iowa App. 1983). Alimony is an allowance to the ex-spouse in lieu of a legal obligation to support that person. *See In re Marriage of Hitchcock*, 309 N.W.2d 432 (Iowa 1981). Alimony is not an absolute right; an award depends upon the circumstances of each particular case. *In re Marriage of Fleener*, 247 N.W.2d 219, 220 (Iowa 1976). The discretionary award of alimony is made after considering those factors listed in Iowa Code section 598.21(3). *See In re Marriage of Hayne*, 334 N.W.2d 347, 350 (Iowa App.1983). Ruth currently earns a net income of $183 per week. She was awarded the home farm on which the marital home is located. Furthermore, she has at her disposal the income generated by the home farm. Donny's net profit for his auction business over a five-year period was only $8,851.80. Furthermore, his income is not regular and consistent. Considering the respective earning capacities of both parties and the property division, we find that Donny should not be required or obligated to pay Ruth alimony. We therefore modify the decree by eliminating the alimony provisions therein.

## III.

We find the variety of other issues raised by appellant to be meritless. Appellant fails to point out anything in the record which would indicate that the trial court failed to consider the tax consequences to

1. The record fails to disclose the value of the parties' bank accounts and the value of the clothing, household goods, furniture, appliances, and jewelry in the parties' respective possession. Furthermore, we do not include in this valuation those assets detailed in paragraph four of the decree.

2. The home farm's valuation does not include the value of the 1988 crop.

3. The Sess farm's valuation also does not take into account the value of the 1988 crop.

4. Donny's valuation was actually $98,975; however, his valuation included an $800 assessment to a riding lawn mower which was distributed to Ruth under paragraph 2(f) of the decree.

the parties. Similarly, the record does not disclose that the trial court unduly relied upon appellee's expert witness, Richard Lomen, or the financial statement. Furthermore, any ambiguity originally in the decree has been resolved by our modification of paragraph four.

### IV.

▮ Donny also seeks appellate attorney fees. Such an award is not a matter of right, but rests within the court's discretion and the parties' financial positions. *In re Marriage of Kern*, 408 N.W.2d 387, 390 (Iowa App.1987). Both parties are gainfully employed. We therefore order the parties to pay their own attorney fees for this appeal. Costs on appeal are assessed one-half to each party.

AFFIRMED AS MODIFIED.