## IN THE COURT OF APPEALS OF IOWA

No. 13-1385
Filed August 13, 2014

IN RE THE MARRIAGE OF MATTHEW R. SEVERIN
AND BOUAPHAN S. SEVERIN

Upon the Petition of
**MATTHEW R. SEVERIN,**
　　　　Petitioner-Appellant/Cross-Appellee,

**And Concerning
BOUAPHAN S. SEVERIN,**
　　　　Respondent-Appellee/Cross-Appellant.

_____

Appeal from the Iowa District Court for Linn County, Stephen B. Jackson

Jr., Judge.

A husband appeals the district court's award of alimony and the marital

home to the wife. The wife cross-appeals the award of alimony. **AFFIRMED AS**

**TO APPEAL AND CROSS-APPEAL.**

Mark D. Fisher of Nidey, Erdahl, Tindal & Fisher, P.L.C., Cedar Rapids, for

appellant.

Crystal L. Usher of Nazette, Marner, Nathanson & Shea, L.L.P., Cedar

Rapids, for appellee.

Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**MULLINS, J.**

Matthew Severin appeals from the decree dissolving his marriage to Bouaphan Severin. Matthew asserts (1) the district court's award of alimony is excessive and (2) the district court erred in awarding Bouaphan the marital home without requiring a cash equalization payment to Matthew of half the home's equity. Bouaphan cross-appeals arguing the award of alimony is insufficient. We affirm as to both appeals.

## I.    BACKGROUND FACTS AND PROCEEDINGS.

Matthew and Bouaphan married in October of 1988. They were married almost twenty-five years and have two adult children. The parties met while living in Vermont attending college. Matthew was eighteen, and Bouaphan was twenty. Bouaphan attended two years of college and dropped out to start a full-time job. After the parties had been dating for two years, Matthew transferred to a university in Indiana. The parties married, and moved to Indiana together. Matthew completed his last year of college and obtained a degree in electrical engineering technology. Bouaphan worked two part-time jobs as a restaurant hostess.

After graduation, Matthew began working at General Electric in Indiana. The parties' first child was born in 1990, at which time Bouaphan stopped working. The parties' second child was born 1992. In 1993, Matthew took a job with Rockwell Collins in Cedar Rapids, and the family moved to Iowa. Matthew advanced through the company to achieve a management position. While employed, he obtained a master's degree in business administration.

Throughout this time, Bouaphan remained in the home caring for the children and handling all the domestic duties. Both parties testified their marriage involved a traditional separation of domestic duties, with Bouaphan providing most of the cooking, cleaning, and child care, and Matthew acting as the breadwinner. Bouaphan never completed her college education.

In 1998, Bouaphan obtained a substitute part-time position in food preparation at a local high school. This later became a permanent part-time position. She earns $13.41 per hour and works almost seven hours per day. She receives some paid holidays, sick time, and Iowa Public Employee's Retirement System (IPERS) benefits but no health insurance or paid vacation time. The position is only available when school is in session, so she is not employed during the summer months. In March 2004, the school offered Bouaphan a full-time position, but she declined it.[1]

Matthew filed for dissolution of marriage in 2011. The children were adults attending college. In a temporary order, the district court ordered Matthew to continue paying the marital home's mortgage, taxes, and insurance; the vehicle insurance and registrations; and the two adult children's tuition and living expenses, as the parties previously had done. During the pendency of the action, Matthew took a $50,000 loan against his Rockwell Collins 401(k) to pay for the children's tuition and living expenses.

---

[1] The parties offered conflicting testimony about why Bouaphan turned down this position. Bouaphan testified Matthew did not want her to take the position. Matthew testified he encouraged her to take it, and she declined.

The dissolution proceeded to trial in 2013. At the time of trial, Matthew had an annual salary of $147,493, plus yearly bonuses averaging $8605 over the previous five years. He received bonuses in 2011 and 2012, which the court ordered placed in escrow during the pendency of the dissolution. Bouaphan had an annual salary of $16,475. The parties also owned substantial marital property, including a home, various retirement and bank accounts, and several vehicles. The parties' retirement assets included Matthew's Rockwell Collins 401(k) pension, Matthew's individual retirement account (IRA), Bouaphan's IRA, and Bouaphan's IPERS account.

The district court ordered Matthew to pay Bouaphan $2900 per month in spousal support until she reaches the retirement age of sixty-seven. It awarded Bouaphan the marital home and all its equity and offset this by awarding Matthew more of the retirement assets. Matthew received his Rockwell Collins 401(k) pension, one-half of Bouaphan's IPERS account, all bank accounts in his name alone, his bonuses from 2011 and 2012, and two vehicles. The court ordered Matthew to pay off the credit card in his name and some unpaid medical bills. In addition to the marital home, Bouaphan received Matthew's IRA, her own IRA, one-half of her IPERS account, and a vehicle. The court ordered Bouaphan to pay her outstanding medical bills and all debt held in her name alone. In total, Bouaphan received net assets of approximately $328,544. Matthew received net assets of approximately $338,703.[2] The court further provided neither party was

---

[2] Following trial, Bouaphan filed a motion for expanded findings of fact and conclusions of law, and Matthew filed a motion under Iowa Rule of Civil Procedure 1.904(2). The district court considered both motions and denied them.

responsible for the cost of the adult children's post-secondary education or living expenses.

Matthew appeals from the decree of dissolution arguing the district court erred in ordering spousal support that is excessive in amount and duration and in failing to order Bouaphan to pay him an equalization payment for half the equity in the marital home. He contends both the spousal support award and the property division are inequitable. Bouaphan cross-appeals arguing the spousal support should be higher and should continue until her death or remarriage.

## II. STANDARD OF REVIEW.

We review dissolution proceedings de novo. Iowa R. App. P. 6.907. We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R. App. P. 6.904(3)(g). "Prior cases are of little precedential value, except to provide a framework for analysis, and we must ultimately tailor our decision to the unique facts and circumstances before us." *In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995).

## III. ANALYSIS.

### A. Spousal Support.

"Whether spousal support is justified is dependent on the facts of each case." *In re Marriage of Hazen*, 778 N.W.2d 55, 61 (Iowa Ct. App. 2009). "Even though our review is de novo, we accord the trial court considerable latitude in making this determination and will disturb the ruling only when there has been a failure to do equity." *In re Marriage of Benson*, 545 N.W.2d 252, 257 (Iowa

1996). The court considers the factors set out in Iowa Code section 598.21A(1) to determine the amount of spousal support:

    a. The length of the marriage.
    b. The age and physical and emotional health of the parties.
    c. The distribution of property made pursuant to section 598.21.
    d. The education level of each party at the time of marriage and at the time the action is commenced.
    e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
    f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
    g. The tax consequences to each party.
       . . . .
       . . . .
    j. Other factors the court may determine to be relevant in an individual case.

In applying the statutory factors, there are three types of spousal support the court may award. *In re Marriage of Becker*, 756 N.W.2d 822, 826 (Iowa 2008). Traditional spousal support is payable for life or so long as the spouse is incapable of self-support. *Id.* Rehabilitative spousal support is a way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce. *Id.* "Reimbursement spousal support allows the spouse receiving the support to share in the other spouse's future earnings in exchange for receiving the spouse's contributions to the source of that income." *Id.* "Property division and alimony must be considered together in evaluating their individual sufficiency." *In re Marriage of Griffin*, 356 N.W.2d 606,

608 (Iowa Ct. App. 1984). Matthew contends the spousal support award is excessive in amount and duration. Bouaphan cross-appeals contending the award should be a greater amount for a longer duration.

### 1. Amount.

Matthew argues, in light of their salaries, their expenses, and the court's property division, the amount of his support obligation, $2900 per month, is excessive and creates substantial hardship to him. The district court found Matthew had an annual *gross* salary of $147,493 and received bonuses averaging *net* $8605 over the previous five years. Thus, it used $156,098[3] as his annual income in calculating the support award. Bouaphan had an annual salary of $16,475. Matthew asserts if Bouaphan works forty hours per week, she would earn $31,636.80 per year.[4] He also asserts Bouaphan exaggerated her expenses and urges the court to adopt his estimate of her expenses. Matthew further asserts, based upon his estimate of her expenses—$3414 per month— the court should award Bouaphan $1800 per month until she reaches the age of sixty-two. Matthew concludes this amount is sufficient for her needs. Matthew also argues the district court's property distribution left him with few liquid assets. Because of this, and because of the excessive support obligation, he claims he is unable to pay the costs of the children's education or purchase a residence for himself. He submits the law provides "the spouse with the lesser earning capacity is entitled to be supported, for a reasonable time, in a manner as closely

---

[3] Annual salary, plus the average yearly bonus.
[4] $15.21/hour x 40 hours per week x 52 weeks per year=$31,636.80.

resembling the standards existing during marriage as possible[.]" *In re Marriage of Hayne*, 334 N.W.2d 347, 351 (Iowa 1983). However, he emphasizes this entitlement is limited to "the extent that [it] is possible without destroying the right of the party providing the income to enjoy at least a comparable standard of living as well." *Id.*

Bouaphan asks this court to increase the current amount of support to $3750 per month until she reaches age sixty-seven, and thereafter $1500 per month until her death or remarriage. She contends there is substantial evidence of her need for spousal support now and past the age of retirement. She argues the length of the marriage, almost twenty-five years, weighs in favor of a greater amount of support. She lists a number of health complaints that affect her finances and her ability to work. She also supported Matthew during his education and took care of the home and family throughout their marriage. Her education and earning potential have resulted in a large income disparity between herself and Matthew.

The district court found traditional alimony was appropriate in this case:

This is a long-term marriage, over twenty-four years. During their marriage, Bouaphan supported Matthew in his career, working and taking care of the household and allowing Matthew to complete his college degree, a master's degree in business education [sic] and to advance in his career such that he earns a salary of almost $150,000 per year. On the other hand, Bouaphan has not completed her college degree and is unlikely to do so. . . . Matthew has consistently earned wages in the range of ten times the amount Bouaphan earns per year. Given the small likelihood that Bouaphan will be able to find a job that pays much more than what she earns at the present time, the Court believes that alimony would be appropriate to be paid until Bouaphan reaches retirement age of sixty-seven.

The court further found Bouaphan was able and would need to supplement her income with other part-time work, particularly in the three months of summer when her Linn-Mar job is not available. The court determined if she obtained another part-time position, her income would increase to $20,000, and used this figure to calculate spousal support. The court also found both parties had overstated their expenses.[5] After considering these factors, the court found Matthew had the ability to pay $2900 in spousal support each month until Bouaphan reaches the age of sixty-seven.

The parties were married almost twenty-five years. They are both in their mid-forties and in reasonably good health.[6] By any measure, Matthew's annual earnings are substantially more than Bouaphan's,[7] even if she takes an

---

[5] The district court found:
> Matthew includes a number of expenses for the parties' adult children, including college tuition, health savings account contributions, and car expense. . . . [T]he Court will not order Matthew to contribute to the children's college educations or other expenses. Matthew may do so if he chooses to. In addition, Matthew shows an expense for a large deduction for a retirement contribution—more than he allows for Bouaphan. The Court finds it is not equitable to allow Matthew to reduce his income by such a large retirement contribution relative to Bouaphan's. The Court also finds Bouaphan has overstated certain of her expenses and although she indicates that she has calculated her expenses based upon an average over the last period of eighteen months, Bouaphan will have to bring her spending in line and work within a budget.

We accept the district court's findings as to these facts and its conclusions about the parties' expenses.

[6] Bouaphan claims to have a number of health issues, none of which are particularly severe or costly. Additionally, Bouaphan's claimed expenses include health insurance, dental and orthodontia work, chiropractic care, optical and optometrist care, physical therapy, and unreimbursed medical expenses. Accordingly, we assign her health concerns little additional weight in considering the amount of support.

[7] The district court found historically Matthew earned about ten times the amount Bouaphan earned. For purposes of determining spousal support, the district court concluded she had the ability to earn $20,000 per year. Matthew's annual income of

additional job to work full time. His educational background, training, employment skills, and work experience far outpace hers, as does his earning capacity. Throughout the marriage Bouaphan cared for the children and home and worked to support Matthew as he sought higher education and employment advancement. It is infeasible at this point for Bouaphan to maintain herself at a standard of living reasonably comparable to that enjoyed during the marriage without an award of spousal support. Matthew complains the current support award leaves him unable to pay the costs of the children's education or purchase a residence, which he asserts creates a substantial hardship to him and destroys his ability also to enjoy a comparable standard of living. The district court order was clear that neither party was required to contribute to the cost of their adult children's education or living expenses. The parties may do so if they choose to, but those expenditures cannot influence the calculation of the support award.

On our de novo review of the facts, it is our duty to determine whether the district court ruling was equitable. The evidence as presented at trial and as argued on appeal is a mix of apples and oranges—gross income vs. net income, failure of anyone to provide net computations considering spousal support tax consequences, and so forth—making precise mathematical post-tax factual determinations by us nearly impossible. Nonetheless, we find that even after Matthew pays the spousal support as ordered by the district court, he would have gross income in excess of $10,000 per month. Correspondingly, after receipt of spousal support, Bouaphan would have gross income—including wages imputed

$156,098 is nearly eight times that amount. Matthew's argument in his brief has his earnings at five times the $31,637 he argues is her earnings potential.

by the district court—of approximately $4566 per month, less than half of Matthew's gross. The district court found both parties had overstated their expenses, and we agree.[8] We find the support award, together with her salary, is sufficient to maintain Bouaphan at a standard of living reasonably comparable to that enjoyed during the marriage without infringing upon Matthew's right to enjoy at least a comparable standard of living. We find that the spousal support award is not inequitable and affirm the district court as to its amount.

## 2. Duration.

Matthew contends the district court ordered alimony for too long because it failed to consider the abundance of resources available to Bouaphan at the age of sixty-two, including social security benefits, half her IPERS benefits, and half of Matthew's IRA benefits. Her total income would be approximately $2156per month.[9] Matthew argues it is inequitable for him to continue to pay the ordered

---

[8] Matthew included several expenses for the adult children and a large line item for his retirement savings. Bouaphan included in her expenses estimate $1146 for such items as clothing, cosmetics, books, "entertainment-outings," gym, hobbies, "leisure money," magazines, firewood, and holiday house decorations. The district court found, "Bouaphan has overstated certain of her expenses. . . . Bouaphan will have to bring her spending in line and work within a budget."

[9] Matthew asserts Bouaphan will receive the following approximate amounts in income upon her retirement at sixty-two: $900 per month from Social Security; $628 per month from IPERS; and $628 per month from Matthew's Rockwell Collins pension. The income from the pension plan Matthew assigns to Bouaphan would only accrue if this court accepts his proposed division of that asset, however, because the district court ordered that Matthew would receive the entire pension plan, Bouaphan will not receive any income from it. In addition, these calculations assume that Bouaphan will be able to begin collecting the Rockwell Collins pension upon her retirement at sixty-two when Matthew is only sixty and unlikely to be retired himself for several more years. It is unclear from the record whether Bouaphan would be able to collect the pension prior to Matthew's retirement.

support for the five years between Bouaphan's retirement at sixty-two and when she reaches the age of sixty-seven.

Bouaphan responds that her income in retirement will be small compared to Matthew's. Matthew will continue making significant contributions to his retirement assets (by his own expenses estimate, $983 per month, or $11,796 per year) and will have significantly more income upon his retirement than she. She argues this should be equalized in light of her contributions to Matthew's career. She also submits she would be unable to receive her half of Matthew's Rockwell Collins pension until his retirement, which could be years after her own. Thus, she contends the support obligation should extend into her retirement in the amount of $1500 until her death or remarriage.

Although it appears Bouaphan will have several sources of income during her retirement, it is clear Matthew will accumulate much more through the remainder of his career. We acknowledge that Bouaphan also will be contributing to her retirement assets through her continued employment, but these assets will not accumulate as rapidly as Matthew's. Matthew's argument assumes Bouaphan will retire and begin collecting benefits at age sixty-two when that is not a necessary outcome. Matthew's argument also assumes without evidentiary support that Bouaphan will be able to collect his Rockwell pension before he himself does so. We also acknowledge, however, that Bouaphan will receive sufficient income following her retirement at age sixty-seven, and therefore there is no need to extend Matthew's support obligation into her retirement. Such was the district court's finding and we find there was no failure

to do equity. Therefore, we affirm the support obligation as to its amount and duration.

## B. Property Distribution.

We examine the entire record and adjudicate anew the issue of property distribution. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We will disturb the district court's ruling only when there has been a failure to do equity. *Id.* Marital property is divided equitably, considering the factors in Iowa Code section 598.21(5). *Id.* at 678. These factors include:

a. The length of the marriage.
. . . .
c. The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.
d. The age and physical and emotional health of the parties.
e. The contribution by one party to the education, training, or increased earning power of the other.
f. The earning capacity of each party including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children, and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonable comparable to that enjoyed during the marriage.
. . . .
h. The amount and duration of an order granting support payments to either party pursuant to section 598.21A and whether the property division should be in lieu of such payments.
i. Other economic circumstances of each party, including pension benefits, vested or unvested. . . .
j. The tax consequences to each party.
. . . .
. . . .
m. Other factors the court may determine to be relevant in an individual case.

"An equitable distribution of marital property, based upon the factors in 598.21(5), does not require an equal division of assets." *McDermott*, 827 N.W.2d at 682

(quoting *In re Marriage of Kimbro*, 826 N.W.2d 696, 703 (Iowa 2013)). "Equality is, however, often most equitable[.]" *Id.* "To achieve an equitable division, we apply the factors contained in section 598.21(5), keeping in mind there are no hard and fast rules governing economic issues in dissolution actions." *Id.* Our decision depends on the particular facts relevant to each case. *Id.* "Property division and alimony must be considered together in evaluating their individual sufficiency." *In re Marriage of Griffin*, 356 N.W.2d 606, 608 (Iowa Ct. App. 1984). This is evident from each being a factor for determining the other. *See* Iowa Code §§ 598.21(5)(h), 598.21A(1)(c).

Matthew contends the district court should have ordered Bouaphan to make an equalization payment to him for his share of the equity in the marital home. The district court awarded Bouaphan the marital home, which it valued at $190,000, and all its equity, which was approximately $74,000. It offset the grant of equity by awarding Matthew more of the retirement accounts. Matthew raises a number of issues with the court's division and urges this court to order a sale of the marital property to divide the proceeds between the parties.

### 1. *The $50,000 401(k) Loan.*

First, he argues the $50,000 loan he took from the 401(k) to pay for the children's education costs should have been excluded from the retirement accounts before they were divided between the two spouses. Thus, he asserts the Rockwell Collins 401(k) plan the district court awarded to him should have been valued at $266,881, rather than the $312,571 value the court used.[10] It is

---

[10] $312,571 minus the current balance of the loan ($45,690) equals $266,881.

true that Matthew took the loan against his 401(k) when the district court entered a temporary order requiring Matthew to pay the adult children's post-secondary education costs. However, when Matthew repays the loan, he will be repaying it into his own 401(k), thereby repaying himself. To exclude the $50,000 from the property division in essence forces Bouaphan to pay half of the loan herself in lost assets. However, as discussed above, the decree orders neither parent to contribute to the adult children's education or living costs. Therefore, the district court was correct to include the loan in the Rockwell Collins 401(k) for the purpose of calculating the property division.

### 2. Use of retirement funds to offset equity.

#### a. Different nature of retirement versus non-retirement assets.

Second, Matthew argues the court's use of retirement funds to offset the grant of equity in the marital home to Bouaphan was wrong for three reasons. He asserts the offset fails to account for the different natures of retirement and non-retirement assets. He explains that *In re Marriage of Crosby*, 699 N.W.2d 255, 258 (Iowa 2005), requires this court to treat retirement and non-retirement assets differently in determining an equitable division of marital property because retirement accounts "are not liquid and cannot be utilized without penalty for many years[.]" In *Crosby*, this court reversed a decision by the district court to divide a retirement savings account between the parties and award the wife attorney fees and the value of other assets from the husband's share. *Crosby*, 699 N.W.2d at 258. The district court found this was inappropriate but did not articulate a rationale. *Id.* Thus, Matthew overstates any principle to be drawn

from *Crosby* that would require the court to treat the retirement and non-retirement assets differently. It is appropriate for the court to offset the marital home's equity with retirement assets. Matthew's complaint that retirement accounts are not liquid assets ignores that the home and its equity are not liquid either.

### b. Tax consequences.

Matthew further asserts the offset fails to account for the tax consequences to him. He complains, "If Matt is not awarded equity in the home, liquidation of the retirement accounts will be among his only options to obtain capital to purchase a home." He further claims there will be taxes on his retirement account eventually, even if he does not liquidate the account now. Bouaphan argues the tax consequences which the court must consider are those inherent "in satisfying the property distribution." Indeed, "[i]t [is] no error for the court to consider the full value of [a retirement plan] without figuring in the potential tax liability upon liquidation when determining the value of marital property for division[.]" *In re Marriage of Hayne*, 334 N.W.2d 347, 353 (Iowa Ct. App. 1983). Nothing in the court's decree requires Matthew to liquidate any amount of his retirement accounts, and the court is required to consider the taxation consequences of the division itself, not collateral future consequences to the parties. *See In re Marriage of Hogeland*, 448 N.W.2d 678, 680-81 (Iowa Ct. App. 1989). It was appropriate for the district court to offset its award of the marital home and its equity to Bouaphan by granting Matthew more of the retirement assets.

### c. Amount awarded insufficient.

Next Matthew argues the value of the assets the court awarded him is insufficient to offset the grant of equity in the marital home to Bouaphan. He bases this claim on his argument that the district court seriously underestimated the value of the marital home. The district court heard testimony from two different sources on the value of the marital home: Matthew offered a then-three-year-old appraisal; Bouaphan offered the testimony of Janet Hullaby, a realtor and buyer specialist, who stated comparable properties were selling in the price range of $174,000 to $218,000, with an average price of $196,700. The district court made the following findings:

> [T]he Court was not given the best evidence concerning the value of the real estate. The appraisal submitted by Matthew is over three years old and the Court finds that [it] is not valid given the volatile changes in the real estate market that have occurred since the appraisal was created. In addition, the market analysis provided by Ms. Hullaby is, admittedly, not an appraisal of the property. However, the Court finds that the market analysis provided by Ms. Hullaby gives the Court the best approximation of what the real estate may be worth.

Both parties previously had agreed the home needed some repairs before it would be ready to sell. The court found the home was worth the average price for comparable real estate, subtracted a reasonable amount for the work it would need before sale, and concluded the home had a value of $190,000. Based on the remaining mortgage balance of approximately $116,000, the court concluded Bouaphan would receive net equity of $74,000. We see no reason to disturb these findings.

The district court calculated its disposition of the remaining marital assets and debts according to the equity in the home. It granted Bouaphan the home with net equity totaling $74,000; Matt's IRA valued at approximately $235,000; her IRA valued at approximately $13,498; an automobile worth $4866; and various bank balances totaling approximately $2194. It ordered her to pay medical bills totaling approximately $1014. The court granted Matthew his Rockwell Collins 401(k) totaling $312,517; his 2011 bonus of $14,167; his 2012 bonus of $6096; various bank balances totaling approximately $4396; his health savings account balance of approximately $164; and two vehicles totaling approximately $14,727. It ordered him to pay $100 in medical bills and approximately $13,264 in credit card debt. Overall, Bouaphan received total net assets of approximately $328,544. Matthew received net total assets of approximately $338,703. Thus, Matthew received around $10,000 more in marital assets than Bouaphan. Therefore, we reject Matthew's argument that the offset from Bouaphan receiving the equity in the house was insufficient. Bouaphan states she is satisfied with the property distribution. We find there was no failure to do equity in the property distribution.[11]

### C.    Attorney Fees.

"Attorney fees are not a matter of right, but rather rest in the court's discretion." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). Factors

---

[11] Matthew further argues if the court grants him an equalization payment for the equity in the marital home, it should leave the remaining property distributions as they are. Because we find no need for an equalization payment, we need not address this argument.

the court considers include "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (quoting *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993). We may also consider "whether the party making the request was obligated to defend the trial court's decision on appeal." *In re Marriage of Castle*, 312 N.W.2d 147, 150 (Iowa 1981). Counsel for Bouaphan filed an affidavit indicating attorney fees in this matter were $5118.75.[12] Because both parties appealed the decree and are able to pay, we award no attorney fees.

## IV. CONCLUSION.

Finding the district court did not fail to do equity in its award of alimony and its division of the marital property, we affirm as to the appeal and cross-appeal. We award neither party attorney fees. Costs on appeal are assessed one half to each party.

**AFFIRMED AS TO APPEAL AND CROSS-APPEAL.**

---

[12] The district court declined to award Bouaphan any attorney fees (or any share of Matthew's 2011 and 2012 Rockwell Collins bonuses) as recompense for Bouaphan allegedly secreting her salary into a private bank account. The testimony regarding this accusation was conflicting.