**IN THE COURT OF APPEALS OF IOWA**

No. 24-1670
Filed October 15, 2025

**IN RE THE MARRIAGE OF CHAD J. KLOPPE
AND RACHELLE A. KLOPPE**

**Upon the Petition of
CHAD J. KLOPPE,**
        Petitioner-Appellant,

**And Concerning
RACHELLE A. KLOPPE,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Dallas County, Michael Jacobsen,

Judge.

        An ex-spouse appeals the spousal support provisions of the decree and in

the alternative, if the award is affirmed, the division of equity in the marital home.

**AFFIRMED.**


        Katie M. Naset of Hope Law Firm & Associates, P.C., West Des Moines, for

appellant.

        Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellee.


        Considered without oral argument by Greer, P.J., and Badding and

Chicchelly, JJ.

**GREER, Presiding Judge.**

After the district court awarded Rachelle Kloppe spousal support of $4000 per month, her ex-husband, Chad Kloppe appealed. Although they were married for over thirty-years, Chad maintains he should not have been ordered to pay any spousal support if the district court had appropriately factored in the high value of assets she retained and her ability to earn almost $100,000 per year. Rachelle asserts because of the disparity between Chad's and her earnings, spousal support was justified. Chad makes an alternative argument that if the spousal support award is affirmed, he should receive one-half of the home equity as he only consented to give Rachelle all of the equity, which she did receive, if he was not required to pay spousal support. Rachelle also requests appellate attorney fees.

We find the award of spousal support to be equitable. As for the division of the marital home equity, in the full picture of the property division, the court's treatment of that was also equitable. Finally, we award Rachelle $10,000 towards her appellate attorney fees.

**Factual and Procedural Background.**

Chad and Rachelle were married July 9, 1994. Chad petitioned to dissolve the marriage in June 2023 and the trial was held on July 15, 2024, with the parties stipulating during trial to the issues involving their minor child.[1] The contested issues remaining were spousal support, property division, and attorney fees. At

---

[1] As an aside in the total picture, the parties have three children, but only one was a minor at the time of trial. Chad agreed to pay $1000 in child support for the minor child's benefit and the parties stipulated to joint legal custody and joint physical care, sharing equal parenting time.

the time of trial, Chad was almost fifty-five years old, and Rachelle was fifty-two years old.

Both Chad and Rachelle agreed that the value of their marital assets was close to four million dollars. With the division of debts, each party received just over $1,800,000 in net assets.[2] Chad was ordered to make an equalization payment of $378,157.74 to Rachelle, which was done by transferring from his retirement assets to her retirement account.

As for the parties' income and expenses, Rachelle's financial affidavit reflected monthly expenses of $15,248 to sustain her lifestyle and confirmed her annual income of $96,000 in her role as a meeting planner. Chad's trial financial affidavit reflected monthly expenses of $12,801 per month and the trial court noted that Chad calculated his annual salary at his credit risk management job at a range of $310,000 to $325,000, but that his reported 2023 Medicare wages, including his bonus,[3] totaled $317,188.39. Although Chad testified that Rachelle should only show expenses of half of what she claims, his earlier-filed financial affidavit, which included expenses involving the marital home that Rachelle was awarded, showed monthly expenses at $15,756.

At trial, Chad advocated that he should not have to pay any spousal support. On her end, Rachelle requested traditional spousal support of $6,000 per month for her lifetime. The district court limited the spousal support to $4,000 per month,

---

[2] The district court adopted the asset values set out in Rachelle's detailed division of property exhibit.

[3] The district court found that Chad generally receives a discretionary bonus in February every year, but it is based on company performance and the amount varies. The bonus for 2023 equaled $105,000.

ending when Chad turns sixty-five, either party dies, or upon Rachelle's remarriage. Given Chad's age the decree essentially provided spousal support for no more than ten years.

We turn to Chad's appeal.

**Standard of Review.**

Because dissolution of marriage proceedings are equitable actions, our review is de novo. Iowa R. App. P. 6.907; *In re Marriage of Schenkelberg,* 824 N.W.2d 481, 483–84 (Iowa 2012). We do not disturb the district court decree unless there has been a failure to do equity, and we give the court considerable latitude when we review questions over spousal support. *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). "We give weight to the factual determinations made by the district court; however, their findings are not binding upon us." *Id.*

**Spousal Support Award.**

The district court did not identify what category of spousal support it awarded. *See In re Marriage of Pazhoor*, 971 N.W.2d 530, 539 (Iowa 2022) (noting there are four types of spousal support: rehabilitative, reimbursement, transitional, and traditional; each with a different goal). Because this was a long-term marriage and the spousal support extends over many years, we presume the district court intended to award traditional spousal support or a set term. *Id.* at 543 (describing the purpose of traditional spousal support as providing "the receiving spouse with support comparable to what he or she would receive if the marriage continued." (cleaned up)). "An award of traditional spousal support is equitable in marriages of long duration to allow the recipient spouse to maintain the lifestyle to which he

or she became accustomed." *In re Marriage of Sokol*, 985 N.W.2d 177, 185 (Iowa 2023).

To start, we recognize this marriage to be one of long duration with a disparity between the income of these parties, so traditional spousal support is appropriate. In the next step we acknowledge that "the imposition of and length of an award of traditional spousal support is 'primarily predicated' on need and the ability to pay." *See In re Marriage of Stenzel*, 908 N.W.2d 524, 533 (Iowa Ct. App. 2018) (citation omitted). And even though there is an equal division of assets in the property division here, our supreme court has "affirmed awards both of [spousal support] and substantially equal property distribution, especially where the disparity in earning capacity has been great." *Pazhoor*, 971 N.W.2d at 543 (citation omitted). Likewise, our supreme court has emphasized that our appellate court should avoid "undue tinkering" with the judgment calls related to spousal support awards. *Sokol*, 985 N.W.2d at 182–83.

We also have statutory guidance setting out criteria to apply when making a determination about spousal support found in Iowa Code section 598.21A(1) (2024):

> a. The length of the marriage.
> b. The age and physical and emotional health of the parties.
> c. The distribution of property made pursuant to section 598.21.
> d. The educational level of each party at the time of marriage and at the time the action is commenced.
> e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and

the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

 f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.

 g. The tax consequences to each party.

 h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.

 i. The provisions of an antenuptial agreement.

 j. Other factors the court may determine to be relevant in an individual case.

The court considers *all* factors in section 598.21A when determining the equitable amount of spousal support, *Schenkelberg*, 824 N.W.2d at 486, and "the various factors . . . cannot be considered in isolation from each other," *Gust*, 858 N.W.2d at 408. Finally spousal support is intended to "maintain a standard of living reasonably comparable to that . . . enjoyed during the marriage." *In re Marriage of Becker*, 756 N.W.2d 822, 827 (Iowa 2008); *see also In re Marriage of Hettinga*, 574 N.W.2d 920, 922 (Iowa Ct. App. 1997) ("The purpose of a traditional or permanent [spousal support] award is to provide the receiving spouse with support comparable to what he or she would receive if the marriage continued."). Luckily, these parties were in good health; both had established they could earn six figure salaries based on their strong work skills. So we turn to what the parties need to maintain their pre-dissolution lifestyle and what Chad can afford to pay to achieve that result for both parties.

Chad's main argument is that Rachelle left the marriage with almost two million dollars of assets; comprised of what he asserts was "nearly $600,000 in

equity" in a home that is too large for her to maintain.[4]  Using the district court's determination of the value of the home, after deducting the mortgage and home equity debt against the property, the net equity equaled $458,608 ($966,350 – $407,838 – $99,904).  And, although Chad indicated he could only afford a lower priced home, his itemization of his monthly expenses included an identical amount to those household expenses that Rachelle listed with both including a $3,486 mortgage payment.  Likewise, most of the assets divided were either non-income earning or tied up in retirement accounts, so there was no way to fund current expenses over and above their incomes without selling property or liquidating accounts.

Chad also argues that the parties were frugal during the marriage and "did not live at or even near their economic means."  True, they were able to save significant monies for retirement, but their itemization of their monthly expenses tells more of the story of the lifestyle they lived during the marriage.  Both parties wanted to utilize the retirement assets with a goal of early retirement.  The court noted the parties' pre-dissolution goal of retiring early from their careers and stated:

> Chad will be able to maintain the same lifestyle as during marriage even paying spousal support to Rachelle.  Rachelle would need to receive spousal support to maintain a similar lifestyle as during their marriage.  It is likely that Chad will be able to retire before the normal retirement age, even with paying spousal support.  Rachelle may also be able to retire before the normal retirement age without spousal support but that proposition is less likely.  Each party will receive significant assets from the property division which may allow them to retire earlier than the retirement age, however, Rachelle

---

[4] Chad testified that the home has almost 6500 square feet of room (with six bathrooms).

would need to receive spousal support for a period of time in order to reach that goal.

Noting that one of Rachelle's justifications for spousal support was to support her desire to retire, Chad testified Rachelle would have access to nearly six million dollars if she retires at age sixty-seven. Thus, we believe the court's determination that spousal support should end close to Rachelle's retirement age makes sense. *See In re Marriage of Mauer*, 874 N.W.2d 103, 111 (Iowa 2016) (noting that terminating spousal support may be appropriate when the payee spouse reaches "a position where self-support at a standard of living comparable to that enjoyed in the marriage is attainable." (citation omitted)). She will be able to draw on her retirement assets as Chad draws on his.

In examining the ability to pay, Chad also argues he will have to earn $5360 to pay a spousal support award of $4000, given the tax consequences that impact his earnings. Without a bonus, he confirmed that he has a salary of $228,000, and for most years with his bonus his income has exceeded $300,000, with higher reported earnings in 2023. Before landing her current job, which pays $96,000 with her bonus, Rachelle's income was significantly lower, peaking in 2020 at $40,000 per year. In determining the standard of living of the parties, we look to the expenses they listed for the benefit of the court, ranging between $12,801 per month to $15,248 per month. Considering Rachelle's current earnings, which equated to a net monthly income of $6058.09, we note that she would still have a shortfall of $9189.91 to achieve that standard of living if we accepted the higher monthly expense itemization. Chad testified that Rachelle needed "less than half of that [$15,000]" for expenses, but we note if we use the $12,801 that he reported

as his monthly expenses for Rachelle, she will still have a shortfall of nearly $6743 given her income. He did identify some expenses on her affidavit that could be eliminated, such as the $1000 school tuition expense that he agreed to cover. But we recognize that both parties will now likely have to reduce their expenses, and even so we do not find that a spousal support payment of $4000 per month is inequitable to either party. Admitting at trial that his net monthly income was around $18,000 to $19,000, after considering Chad's monthly income and his reported expenses, he is left with unspent income in a range of around $5199 to $6199.

A district court has considerable latitude in making an award of spousal support, and we will disturb the court's award only if it is inequitable. *Schenkelberg*, 824 N.W.2d at 486. And although there are cases that might inform our decisions, the determination of spousal support is based upon the particular circumstances of each case. *See In re Marriage of Mills,* 983 N.W.2d 61, 67 (Iowa 2022). Here, we find that the district court's award of $4000 per month in spousal support until Chad reaches age sixty-five is equitable given the parties' standard of living, Rachelle's needs before she retires, and Chad's ability to pay. We affirm the spousal award.

**Alternative Argument—Dividing the Marital Home Equity.**

We do not take Chad's last argument to mean that Chad is appealing the property division as set out by the district court. The district court's division of the property provided an equal division of assets. At trial, Chad asserted that if there was no spousal support awarded to Rachelle, he was willing to give her "either the marital home as part of the asset distribution or at least the equity in the home."

Chad's request to now divide the equity in the marital home sounds like a request for reimbursement for the spousal support he was ordered to pay.

To convince us that an award of part of the marital home equity is equitable if he must pay spousal support, Chad points to the potential tax treatment of the assets he was awarded and of those awarded to Rachelle. Specifically, he contends that a comparison of Rachelle's non-taxable marital home equity with his retirement assets that yet are to be taxed results in Rachelle receiving an additional $300,000 to 350,000 in economic benefit. In the proceedings below, no one suggested that either party liquidate the assets they were awarded, which is presumed in the argument made by Chad now. *See In re Marriage of Hayne*, 334 N.W.2d 347, 353 (Iowa Ct. App. 1983) (noting that where there was no order to liquidate the retirement assets to meet the court's order, there was no error when the court did not consider the potential tax liability when determining the value for the property division). Thus, we do not address the tax implications of any liquidation of assets.

Still, on appeal, Chad argues that he "should be awarded 50% of the home equity, and Rachelle's award from Chad's 401(k) should be increased by the same 50% of the home equity to account for the Court's modification." Trouble is, Chad proposed a similar division of marital assets as that awarded by the district court without any tax ramification adjustments. While it is important to consider the property division along with the spousal support when determining what is equitable, having found that the spousal support award was equitable, we find no reason to disturb the property division as proposed by Chad and as set out in the decree.

**Attorney Fees.**

"In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *In re Marriage of Hoffman*, 891 N.W.2d 849, 852 (Iowa Ct. App. 2016) (citation omitted). Here, Rachelle was successful in defending the decree, and without question, Chad has a better financial ability to pay the fees. Thus, we find that Chad shall pay the sum of $10,000 towards Rachelle's requested appellate attorney fees of $17,200.

**AFFIRMED.**