In re the MARRIAGE OF Lizabeth GRADY–WOODS and Gilbert C. Woods, Sr.

Upon the Petition of

Lizabeth Grady–Woods, Appellant,

And Concerning

Gilbert C. Woods, Sr., Appellee.

No. 96–2213.

Court of Appeals of Iowa.

Feb. 25, 1998.

Joe Bertogli and Harlan M. Hockett, Des Moines, for appellant.

Oscar E. Jones, Des Moines, for appellee.

Heard by HUITINK, P.J., and STREIT and MAHAN, JJ.

STREIT, Judge.

Lizabeth Grady–Woods appeals the district court's economic provisions of a divorce decree denying her a share of the appreciation of her husband's business. Because Lizabeth made tangible contributions during the marriage which aided her husband's work efforts, we modify the decree and award Lizabeth an equitable amount of the business' appreciation.

### I. Background & Facts.

Gilbert and Lizabeth Woods were married on November 29, 1989. It was the third marriage for Lizabeth and the second for Gilbert. They had no children together. At the time of trial, Lizabeth was sixty-four years of age and Gilbert was sixty-seven.

Lizabeth is employed at John Harland Company as a billing clerk. In 1995 she earned $19,000. Gilbert has worked for Auto Body Supply, Inc. since 1949 with only a brief interlude to serve in the military. In 1984 Gilbert contracted to purchase the business. The sale was complete in the Spring of 1989. Gilbert's income was $90,496 in 1995.

At the time of the marriage, both parties owned various assets including Gilbert's business, homes, corporate stock, retirement funds, and checking and savings accounts. During the marriage the parties' assets increased considerably in value. Much of this increase was due to the parties' earnings. Most significantly, Gilbert's business increased in value by $133,000. Lizabeth's home increased by $75,739 and Gilbert's by $12,000. Gilbert's Equi–Vest SEP account increased from $7000 to $104,549 in value. His Kemper Fund increased from $47,000 to $55,000. Lizabeth's profit-sharing fund increased from $29,247 to $46,335 at the time of trial. The parties' checking account also grew considerably, increasing to $90,000 at the time of their separation. The parties upgraded their automobiles while married.

Gilbert drives a 1992 Lincoln and Lizabeth drives a 1994 Oldsmobile.

Lizabeth filed a petition for dissolution in July of 1995. The district court awarded Lizabeth her home, an automobile, and her profit share account valued at $46,335, checking and savings accounts valued at $5000, a $10,000 CD, a property settlement of $30,000, and $1000 attorney fees. No alimony was ordered. Gilbert was awarded his Kemper Fund, his CD, the stock in Auto Body Supply, valued at $400,000, and his Equi–Vest account. Lizabeth appeals.

### II. Standard of Review.

Our review of the economic provisions of divorce decree is de novo. Iowa R.App.P. Rule 4 (1997). We examine the entire record and adjudicate anew the issues properly presented on appeal. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

### III. Division of Property That Appreciated During the Marriage.

Lizabeth contends the district court's division of marital assets is inequitable. At the crux of this dispute is whether Lizabeth is entitled to a percentage of the amount Gilbert's business appreciated during their marriage. The business' appreciation was approximately $133,000. Lizabeth contends she is entitled to some of the appreciation of the business because she contributed her salary to the marriage and was primarily responsible for maintaining the home. She argues she made the contributions of a hardworking marital companion. Gilbert contends she deserves no percentage of the appreciation because she made no contribution to the business.

■ There are several factors given special emphasis when determining an equitable division of property owned prior to the marriage and appreciated during the marriage. *See In re Marriage of Lattig*, 318 N.W.2d 811 (Iowa App.1982). First, the "tangible

contributions of each party" to the marital relationship are considered. *Id.* at 815. Homemaking is considered a tangible contribution to a marriage. Iowa Code § 598.21(1) (1997). Looking to the tangible contributions prevents entitlement to appreciated property due to the mere existence of the relationship. *See Lattig,* 318 N.W.2d at 815. Second, we look at whether the appreciation of the property is attributed to fortuitous circumstances or the efforts of the parties. *Id.* Third, we look to the length of the marriage. *In re Marriage of Hass,* 538 N.W.2d 889, 892 (Iowa App.1995).

In addition to the factors given special emphasis, we look to the statutory factors including the age and physical and emotional health of the parties, the earning capacity of each party, and the economic circumstances of the parties. Iowa Code § 598.21(1)(1997). The critical inquiry is always whether the distribution is equitable in the particular circumstances. *In re Marriage of Williams,* 449 N.W.2d 878, 881 (Iowa App.1989).

 The trial court divided the appreciated value of the business by giving it all to Gilbert and none to Lizabeth. The court justified this division as equitable because Lizabeth did not work within the corporation, did not care for children of the couple, and did not entertain business clients. After de novo review and applying the factors set out above, we find giving Lizabeth none of the business' appreciated value is inequitable.

This was not a long marriage. However, during the seven years she and Gilbert were married, Lizabeth made tangible contributions to the marriage. She contributed her full salary to the marital relationship and was responsible for maintaining the home. Gilbert argues Lizabeth was not a homemaker and that her duties were less than other homemakers. Lizabeth claims she cooked, cleaned, ironed, and did household maintenance. Even though a party's contribution to a marriage is an appropriate factor affecting property division, we do not find it useful to analyze the exact duties performed by the marriage partners. We find Lizabeth was a homemaker during the marriage.

The appreciation of the business was not due to a fortuitous circumstance. It appreciated because of Gilbert's hard work. Gilbert says he was not aided in his efforts by Lizabeth in any manner. This is not practical or convincing. Although Lizabeth did not work at the business, she did contribute to the marital home, taking care of home tasks Gilbert would have had to do had he lived alone. Her efforts made Gilbert's life outside work easier, allowing him to concentrate his efforts on his work. She provided marital companionship and contributed to the marriage in every way she was capable. It cannot fairly be said she contributed nothing to the growth of the business, even if her contribution was indirect. To hold otherwise needlessly diminishes the marriage.

It must also be considered that Lizabeth has an earning capacity of approximately $20,000 per year. She is near retirement age. She does not have considerable liquid assets.

Under these circumstances it was not equitable for the trial court to award Lizabeth no percentage of the business' appreciation. The business appreciated throughout the marriage. Lizabeth makes no claim to the value of the business before the marriage. She claims only a portion of the business' appreciation during the seven years she and Gilbert were married. Gilbert alleges he contributed eighty-seven percent and Lizabeth contributed thirteen percent to the growth of the tangible assets during the marriage. We find this an equitable percentage of the business' appreciation to award Lizabeth. The business increased by $133,000 during the marriage. We order Gilbert to pay Lizabeth thirteen percent of that appreciation, a total of $17,290.

*IV. Alimony.*

Lizabeth argues the trial court should have awarded her $1500 per month alimony. Alimony is not a right, rather, an award depends upon the circumstances of each case. *In re Marriage of Miller,* 532 N.W.2d at 162. It is sometimes used to remedy the inequities in a marriage and to compensate a spouse who leaves the marriage at a financial disadvantage. *In re Marriage of Geil,* 509 N.W.2d 738, 742 (Iowa 1993); *In re Mar-*

*riage of Earsa,* 480 N.W.2d 84, 86 (Iowa App.1991). The discretionary award of alimony is made after considering the factors listed in Iowa Code section 598.21(3).[1] *See In re Marriage of Hayne,* 334 N.W.2d 347, 350 (Iowa App.1983).

■ There are three types of alimony awarded by the courts. Rehabilitative alimony serves to support an economically dependent spouse through a limited period of education and retraining. *In re Marriage of O'Rourke,* 547 N.W.2d 864, 866 (Iowa App. 1996). Its objective is self-sufficiency. *Id.* Reimbursement alimony is predicated upon economic sacrifices made by one spouse during the marriage that directly enhance the future earning capacity of the other. *Id.* Traditional alimony is payable for life or for so long as a dependent spouse is incapable of self-support. *Id.*

■ The record does not support an award of any type of alimony. Lizabeth's employment history and earning capacity evidence a self-sufficiency inconsistent with the underlying purpose of rehabilitative alimony. Lizabeth has made no economic sacrifices during the marriage that contributed to Gilbert's earning capacity, and thus, is not entitled to reimbursement alimony. Traditional alimony is awarded when "[t]he feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage." Iowa Code § 598.21(3)(f)(1997). This was a relatively short marriage. From that marriage Lizabeth has acquired her house and a newer car debt free. She will make approximately $20,000 until she retires. While Lizabeth's salary alone may be insufficient, along with her property settlement in excess of $100,000 and the additional $17,000 she was awarded on appeal, she has sufficient funds to support herself. Property division is one factor courts may take into consideration when determining whether alimony should be award-

ed. *In re Marriage of Knight,* 507 N.W.2d 728 (Iowa App.1993). Under these circumstances, she is not entitled to alimony.

### V. Attorney Fees.

Lizabeth requests the court order Gilbert to pay her an additional $7500 toward her trial attorney fees. The court ordered Gilbert pay Lizabeth $1000 in attorney fees. She also asks for attorney fees on appeal.

■ An award of attorney fees is not a matter of right, but rests within the court's discretion. *In re Marriage of Kern,* 408 N.W.2d 387, 390 (Iowa App.1987). The court should make an attorney fee award which is fair and reasonable in light of the parties' financial positions. *See In re Marriage of Miller,* 532 N.W.2d 160, 163 (Iowa App.1995).

■ To overturn an award, the complaining party must show the trial court abused its discretion. *In Re Marriage of Gonzalez,* 561 N.W.2d 94, 99 (Iowa App. 1997). In deciding whether to award attorney fees on appeal, the court considers "the needs of the party making the request, the ability of the other party to pay and whether the party making the request was obligated to defend the trial court's decision on appeal." *In re Marriage of Starcevic,* 522 N.W.2d 855, 857 (Iowa App.1994). In light of the disparity between the parties' incomes and assets, we find the trial court did not abuse its discretion, but should have awarded Lizabeth one-half of her attorney fees at trial. Thus, Gilbert is ordered to pay Lizabeth an additional $3616 for trial attorney fees.

Lizabeth claims she is entitled to appellate attorney fees. In considering these factors, $1000 is ordered to be paid by Gilbert to Lizabeth for appellate attorney fees.

**AFFIRMED AS MODIFIED.**

---

1. Among those factors are the length of the marriage; the property brought to the marriage by each party; the contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services; the age and physical and emotional health of the parties; the contribution by one party to the education or increased earning power of the other; and the earning capacity of each party. The court may also consider "other factors the court ... determine[s] ... relevant in an individual case." Iowa Code § 598.21(3)(1997).