# IN THE COURT OF APPEALS OF IOWA

No. 13-1779
Filed August 27, 2014

**IN RE THE MARRIAGE OF WILLIAM F. AMLING
AND ANN M. AMLING**

**Upon the Petition of
WILLIAM F. AMLING,**
    Petitioner-Appellant,

**And Concerning
ANN M. AMLING,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Scott County, Marlita A. Greve, Judge.

William Amling appeals the economic provisions of the decree dissolving his marriage to Ann Amling. **AFFIRMED AS MODIFIED.**

Richard A. Davidson of Lane & Waterman, L.L.P., Davenport, for appellant.

Gary D. McKenrick and Catherine Zamora Cartee of Cartee & McKenrick, P.C., Davenport, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**TABOR, J.**

About six months into their eight-year marriage, William (Bill) Amling told his wife Ann he wanted to quit his job as a millwright and start a fitness business. Ann supported his decision: "I think you should be happy doing what you're doing, you should enjoy your work." Despite the couple's agreement regarding the business, the dissolution decree referred to Bill as "purposely under-employed" and denied his request for spousal support. Bill challenges that denial on appeal, as well as the division of the marital property and the imputing of his income to determine his child support obligation.

While we appreciate the district court's wide latitude in awarding spousal support, we find the decree fails to do equity between the parties. From our de novo review of the record, we find Ann's greater earning capacity and Bill's health issues create a situation where rehabilitative alimony is appropriate. Likewise, despite the relatively short duration of the marriage, we find inequity in the division of the parties' assets and modify the decree to require Ann to make an equalization payment of $77,097 to Bill. Finally, we affirm Bill's child support obligation.

I.      **Background Facts and Proceedings**

Bill and Ann married in 2005, when they both were in their late forties. Before the marriage, Ann had adopted two foster children. Bill adopted those children after the marriage, and the couple adopted two additional children together. Two of their children were still under eighteen at the time of the dissolution trial, but custody was not disputed and is not an issue on appeal.

The appeal focuses on the couple's finances. Ann brought substantial assets to the marriage, while Bill did not. At the time of the wedding, Bill—who has a high school education—worked as a millwright performing maintenance on overhead cranes at ALCOA. While working approximately seventy-two hour weeks, he consistently earned more than $50,000 per year. Shortly after their marriage, Bill quit his job and, with Ann's financial support, opened his own personal fitness business called "Health by Design." The business has not been as profitable as Bill and Ann had hoped it would be. Despite the business's gross income of approximately $28,800 per year, Bill has netted only about $10,000 per year in profit.

Ann and her sister own several pharmacy-related businesses, and Ann works for those businesses as an accountant. Ann's salary ranged from $268,000 in 2005 to $125,000 in 2012. In addition to her salary, Ann receives substantial dividends from the family businesses.

Bill filed for dissolution of marriage in September 2012. At the time of the hearing, Bill was fifty-six years old and Ann was fifty-seven. Bill testified his health was not good. He had undergone surgery on one shoulder, needed surgery on the other shoulder, and had suffered a heart problem that required stents to be implanted three weeks before trial. At trial, Bill and Ann contested the value of assets in the marital estate, how to equitably divide the property, and spousal support.

The court determined Bill was capable of earning much more than he was taking in from the business and labeled him as "woefully under-employed." The

court cited Bill's industrial skills and previous income level in imputing his income at $35,000 per year for child support purposes. Similarly, because the court deemed Bill capable of self-support without any need for reeducation or retraining, it denied his request for spousal support.

As for the property division, the court awarded Bill gross assets of $336,643 and, after deducting Bill's liabilities, awarded Bill a net award of $271,520. The court awarded Ann gross assets of $1,432,192. The court then determined $1,200,238 of Ann's assets were premarital property that should be excluded from the marital estate, leaving Ann with a net award of $231,909. The court believed this was a fair result because: "The financial condition of this couple can only be attributed to Ann's money management skills and her earning ability. Bill made no contributions to this family's wealth or increase in wealth, which is why he is not entitled to any of Ann's premarital property or appreciation of that property."

Bill appeals, asking us (1) to award him rehabilitative alimony in the amount of $4000 per month for forty-eight months, (2) to award him an equalization payment of $208,094, and (3) to use his actual income of $10,000 per year to set his child support obligation.

## II. Analysis of the Economic Provisions of the Decree

We will address each of Bill's three claims in turn. In doing so, we apply a de novo standard of review, examining the entire record anew. *In re Marriage of Dean*, 642 N.W.2d 321, 323 (Iowa Ct. App. 2002). While we give weight to the district court's findings, particularly concerning witness credibility, we are not

bound by them. *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 484 (Iowa 2012).

### A. Spousal Support

The district court ruled Bill was not entitled to any sort of spousal support.[1] The court denied traditional alimony because the marriage was relatively short and the court deemed Bill capable of earning a larger income and supporting himself. The court denied rehabilitative alimony because it determined Bill did not need reeducation or retraining to make him employable. Finally, the court refused to award reimbursement alimony because Bill did not contribute to Ann's advancements.

We "accord the trial court considerable latitude in making this determination and will disturb the ruling only when there has been a failure to do equity." *In re Marriage of Benson*, 545 N.W.2d 252, 257 (Iowa 1996). But under the circumstances of this case, we conclude failure to award Bill rehabilitative alimony is inequitable. Our conclusion is based on consideration of the pertinent factors set forth in Iowa Code section 598.21A (2013).[2]

Alimony "is a stipend to a spouse in lieu of the other spouse's legal obligation for support." *In re Marriage of Francis*, 442 N.W.2d 59, 62 (Iowa

---

[1] Although the legislature replaced the term "alimony" with the phrase "spousal support" in the Iowa Code in 1980, we still use the terms interchangeably in our case law. *In re Marriage of Ales*, 592 N.W.2d 698, 702 n.2 (Iowa Ct. App. 1999).

[2] Those factors include the length of the marriage; the age and physical and emotional health of the parties; the property distribution; the educational level of each party; the earning capacity of the party seeking maintenance; the feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal; the tax consequences to each party; and other factors the court may determine to be relevant in an individual case.

1989). Specifically, rehabilitative alimony is a means of supporting an economically dependent spouse for a "limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting." *In re Marriage of Anliker*, 694 N.W.2d 535, 541 (Iowa 2005). The district court focused on Bill's employment history as a millwright and determined he would not need any education or training to make him employable at a higher paying job. The court viewed Bill as "purposely under-employed" and decided he could find higher-paying work without assistance. We disagree.

Operating a business that is not turning a significant profit does not amount to being "woefully under-employed." As the district court conceded, many new businesses struggle to make a profit. A primary goal in opening a business is to make money, and the failure to do so is less a purposeful choice than an unfortunate result of the market. Both Bill and Ann testified they expected the business to bring in more proceeds than it did. There is no evidence to suggest Bill did not commit himself fully to the success of his business venture. In fact, Bill took courses to obtain the certification necessary to be a personal trainer, and Ann testified he often worked late at the business. Bill had the complete support of his spouse in deciding to change careers. As married partners, Bill and Ann made a choice for Bill to give up his millwright position, presumably knowing Ann's income would allow such a risk. It is inequitable to focus solely on the economic results and to subsequently hold Bill solely accountable for the business's lackluster performance.

Furthermore, Bill's past employment as a millwright alone is not sufficient to conclude he is capable of immediately becoming self-supporting without any retraining or reeducation. It has been approximately eight years since Bill worked as a millwright, and he is nearly sixty years old. Bill testified to numerous health conditions he had developed preventing him from returning to such physical work, including surgery on his right shoulder, impending surgery on his left shoulder, problems with his knees, and stents placed in his heart. The court's explanation that Bill "did not claim to be disabled as a result" of these conditions is immaterial to the alimony question. Bill's ability to find employment similar to what he had eight years earlier is significantly diminished due to his time away from the physical-labor workforce and his aging body.

Bill will need time to reenter the workforce at a level capable of returning him to a standard of living resembling the one he enjoyed during his marriage to Ann. *See In re Marriage of Hayne*, 334 N.W.2d 347, 351 (Iowa Ct. App. 1983). Additionally, an award of rehabilitative alimony will not cause Ann significant financial hardship. *See id.*

On appeal, Bill contends he is entitled to rehabilitative alimony in the amount of $4000 per month for forty-eight months. We agree a rehabilitative alimony award is necessary to help Bill become self supporting, but find a lower award sufficient when we consider our modification of the distribution of marital property. Thus, we modify the decree to order spousal support for Bill in the amount of $2000 per month for forty-eight months.

### B. Property Distribution

Next, Bill contends the district court's property distribution was not equitable. In reaching an equitable property division, courts weigh factors such as the length of the marriage, the property brought to the marriage by each party, the contribution of each party to the marriage, the age and health of the parties, and their earning capacities. Iowa Code § 598.21(5).

After accounting for premarital property, the court divided the marital property and valued Bill's award at $271,520 and Ann's at $231,909. Bill's disagreement with that division focuses on seven items: (1) the 1980 Corvette, (2) his 401K account, (3) the lake house mortgage, (4) Ann's Edward Jones account, (5) the Harley Davidson motorcycle, (6) tools and guns, and (7) Ann's business interests. We find the decree equitably addressed the Corvette, the lake house mortgage, the tools and guns, and Ann's business interests. But we agree with Bill that the decree should be modified as to the following three assets: the motorcycle, Bill's 401K account, and the appreciation of Ann's Edward Jones account.

### 1. Harley Davidson Motorcycle

Before their marriage, Ann purchased a 2005 Harley Davidson motorcycle for Bill. Ann testified she put the title in Bill's name. At trial, the court considered the motorcycle to be marital property, valued it at $16,000, and awarded it to Bill because Ann admitted not knowing how to drive it.

Bill argues the motorcycle was a gift to him and not subject to equitable division. We agree. Generally, gifts for the benefit of one spouse, even gifts

from the other spouse, are separate property excluded from the divisible marital estate. *See* Iowa Code § 598.21(6) (stating gifts received by either party before or during the marriage is the property of that party unless refusal to divide the property is inequitable to the other party); *see also In re Marriage of Fenton*, No. 09-1948, 2010 WL 2925907, at *5 (Iowa Ct. App. July 28, 2010) (discussing interspousal gifts). We modify the decree to remove the value of the motorcycle from Bill's overall property distribution.

### 2. Bill's Edward Jones 401k

During their marriage, Ann deposited money from her paycheck into a 401K account for Bill. When the dissolution petition was filed, the account had a value of $19,711. The court treated the account as marital property and assigned the full value to Bill's property distribution. But between the time of filing and the start of the trial more than a year later, Bill had depleted the account. Bill testified he spent the money on living expenses after the parties separated. The legitimate use of marital funds for living expenses after separation does not constitute dissipation. *See In re Marriage of Kimbro*, 826 N.W.2d 696, 702 (Iowa 2013). Courts are to consider the net worth and value of assets at the time of trial. *In re Marriage of Muelhaupt*, 439 N.W.2d 656, 661 (Iowa 1989). Thus, the court should not have assigned a value to the account. We modify the decree accordingly.

### 3. Ann's Edward Jones Account

At the time of marriage, Ann's Edward Jones account had a value of $309,094. At the time of trial, the account's value had increased by $316,189 to

a total of $625,283. The court ruled this increase was due to both appreciation and Ann's contributions. Despite the account's value approximately doubling during marriage, the court treated the entire $625,283 as premarital property that was not subject to division.

When determining an equitable division of assets which were owned by one party before the marriage and which appreciated in value during the marriage, we consider the tangible contributions of each spouse, whether the appreciation was fortuitous or due to the efforts of the parties, and the length of the marriage. *See In re Marriage of Grady-Woods*, 577 N.W.2d 851, 852–53 (Iowa Ct. App. 1998). Even indirect contributions, such as marital companionship, deserve consideration. *Id.* at 853. "Each person's total contributions to the marriage cannot be reduced to a dollar amount. Many contributions are incapable of calculation, such as love, support, and companionship." *In re Marriage of Fennelly*, 737 N.W.2d 97, 104 (Iowa 2007). We also look to the age and physical and emotional health of the parties, their respective earning capacities, and their economic circumstances. *Grady-Woods*, 577 N.W.2d at 853.

We find the facts of this case similar to *Grady-Woods*, where the business owned by one spouse appreciated during the marriage, without direct contributions from the other spouse. Nonetheless, our court found the non-owning spouse had made indirect contributions during their seven-year marriage which merited her receiving thirteen percent of the appreciation. *Id.* Overall

equity was the primary consideration in dividing the asset's appreciated value. *Id.*

Equity demands that Bill receive a portion of the appreciation of Ann's Edward Jones account. Bill and Ann forged a family together for eight years, adopting children and pursuing business ventures. Bill is now in his late fifties, suffers health problems, and has a limited earning capacity. Assuming Bill is able to earn at the $35,000 annual level imputed by the district court, his income still falls well below the standard of living he experienced during his marriage to Ann. Additionally, the district court's property distribution would leave Bill with property worth less than $300,000, with only a portion of those assets being liquid assets. Conversely, Ann is leaving the marriage with nearly $1,500,000 in assets, valuable business interests, and a very high earning capacity. Even considering the modification of spousal support, we believe division of this appreciated asset is also warranted by the circumstances. We conclude assigning Bill one-quarter ($79,047) of the total appreciation ($316,189) would be equitable.

### 4. Overall Modification of Property Distribution

After assigning $79,047 in appreciation to Bill, and after removing the value of the motorcycle from the marital estate and using the trial-date value of Bill's 401K, Bill would have a total property distribution of $314,856. After assigning the remaining appreciation ($237,142) to Ann, her total marital property distribution would be $469,051. The difference is $154,195. To ensure equity, we modify the decree by ordering Ann to make an equalization payment to Bill of

$77,097. "Although an equal division is not required, it is generally recognized that equality is often most equitable." *In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007). Considering the value of Ann's premarital property, her income, and her future earning capacity, we conclude equalizing the distribution of marital property is equitable in this case.

### C. Child Support

Before applying the child support guidelines, the district court determined each parent's net monthly income. For Bill, the court determined he should be able to earn at least $35,000 per year based on his skills and past earning capacity. Bill had an actual net income of $10,000 per year. He contends the court's imputation of an income more than three times that amount was improper.

It is permissible to consider earning capacity instead of actual earnings in applying the child support guidelines if use of actual earnings "would create a substantial injustice" or adjustments are needed to "provide for the needs of the children and to do justice between the parties." *In re Marriage of Raue*, 552 N.W.2d 904, 906 (Iowa Ct. App. 1996). Upon our de novo review, we agree with the district court's assessment that use of Bill's actual earnings would create an injustice between the parties. We also agree with the determination of Bill's earning capacity when his work history and occupational qualifications are considered. *See* Iowa Ct. R. 9.11(4). We therefore affirm the provision of the decree setting Bill's child support obligation.

Costs on appeal are taxed one-half to each party.

**AFFIRMED AS MODIFIED.**