**IN THE COURT OF APPEALS OF IOWA**

No. 14-2148
Filed October 28, 2015

**IN RE THE MARRIAGE OF MARYANN S. PETESICH
AND JOHN A. PETESICH**

**Upon the Petition of
MARYANN S. PETESICH,**
      Petitioner-Appellee,

**And Concerning
JOHN A. PETESICH,**
      Respondent-Appellant.
_____

     Appeal from the Iowa District Court for Linn County, Fae E. Hoover-Grinde, Judge.

     An ex-husband appeals the property and spousal support provision of the couples' dissolution decree. **AFFIRMED.**

     John C. Wagner of John C. Wagner Law Offices, P.C., Amana, for appellant.

     David M. Cox of Bray & Klockau, P.L.C., Iowa City, for appellee.

     Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**VOGEL, Judge.**

John Petesich appeals the district court's decree that dissolved his marriage with Maryann Petesich. He asserts the court incorrectly awarded Maryann a portion of the marital appreciation of his premarital retirement accounts. He also claims the amount and duration of the spousal support is not equitable in light of what he claims is Maryann's decision to be underemployed. He claims the property division is inequitable particularly with respect to the order that he pay a portion of the mortgage on the marital home. Finally, he asserts the court abused its discretion in awarding trial attorney fees to Maryann. Maryann defends the district court's decision and requests an award of appellate attorney fees. Having considered the claims made, we affirm the district court's decision as we conclude it achieves equity between the parties and award Maryann $3000 in appellate attorney fees.

**I. Background Facts and Proceedings.**

John and Maryann married in 1996, and two children were born during the marriage, who were sixteen and fourteen at the time of the dissolution trial. John was fifty-five years old, has an electrical engineering degree, and was working as a senior engineer earning $97,850 annually with a yearly bonus that totaled $21,000 in 2013. Maryann was also fifty-five years old at the time of trial, and she has a bachelor's degree in political science and a master's degree in public administration. She was employed as a realtor, and she hoped to earn between $20,000 and $30,000 annually, though she had not yet reached that earnings

level.[1]  Maryann stayed home to care for the oldest child for approximately two years after the child was born, and she maintained part-time employment since then in order to provide flexibility to care for the parties' children and the home. She has worked as a real estate agent since 2004.  Both parties were in good physical health.

The court awarded possession of the marital home to Maryann to provide maximum stability to the children, but it ordered the home to be listed for sale within thirty days of the younger child graduating from high school or earlier if Maryann decided to sell.  After paying the mortgage and closing costs associated with the sale, the parties were to split the net sale proceeds equally.  In order to protect John's interest in the asset, he was ordered to pay one-half of the mortgage payment until it is sold and also share in the cost of the maintenance of the home, though Maryann was solely responsible for the utility and insurance costs.  Maryann also had the option of purchasing the home by refinancing the home and paying John one-half of the equity after an independent appraisal.

John was ordered to pay Maryann $1500 per month in spousal support for ten years, or until Maryann begins to receive social security benefits, whichever occurs first.  The court ordered the support in light of Maryann's decision to make the children a priority, which negatively impacted her career advancement, and in light of Maryann's need for support until such time as she is able to cultivate a client base so that she can become self-supporting.

---

[1] The court imputed to Maryann an annual income of $20,000 for child support purposes, making John's child support payment $830 monthly.  The parties do not raise appellate challenges to the physical care, visitation, or custody provisions of the decree, or the child support calculation.

Both parties were awarded the premarital value of their respective retirement accounts, but the court ordered the increase in those retirement accounts that occurred during the marriage to be equally divided through a qualified domestic relations order. The court noted that both parties contributed to the marriage. While John's contributions were largely financial, Maryann gave up financial earnings in order to provide a stable, structured, and well-run household for the family. Finally, the court ordered John to pay $6000 toward Maryann's trial attorney fees, and gave him a $250 credit in light of John's earlier motion to compel. The court granted Maryann's motion pursuant to Iowa Rule of Civil Procedure 1.904(2) motion to address two contempt complaints she made against John and to clarify its order on several items. John now appeals.

## II. Scope and Standard of Review.

Due to the equitable nature of this proceeding, our review is de novo. *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). We give weight to the district court's factual findings, especially its credibility determinations, because of its ability to observe the witnesses firsthand, but we are not bound by those findings. *In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007). The court has considerable latitude with respect to the question of spousal support, and we will disturb the court's order only when there has been a failure to do equity. *Gust*, 858 N.W.2d at 406.

## III. Premarital Property.

John claims Maryann should not be entitled to one-half of the marital appreciation of his premarital retirement accounts because she did not "in any manner contribute to the appreciation." He contends the growth of those

accounts was fortuitous, as opposed to being attributable to the efforts of the parties during the marriage, and thus, Maryann should not have a claim on the property.

All property, except inherited or gifted property received by one party, is subject to division in a dissolution proceeding. *In re Marriage of Fennelly*, 737 N.W.2d 97, 102 (Iowa 2007).

> The district court "may not separate [a premarital] asset from the divisible estate and automatically award it to the spouse that owned the property prior to the marriage." Instead, "property brought to the marriage by each party" is merely one factor among many to be considered under [Iowa Code] section 598.21 [(2011)]. Other factors include the length of the marriage, contributions of each party to the marriage, the age and health of the parties, each party's earning capacity, and any other factor the court may determine to be relevant to any given case.

*Id.* (first alteration in original) (internal citations omitted). While the reasons for the asset's appreciation during the marriage is a factor for the court to consider, it is not an exclusive, determinative factor.

> There are several factors given special emphasis when determining an equitable division of property owned prior to the marriage and appreciated during the marriage. First, the "tangible contributions of each party" to the marital relationship are considered. Homemaking is considered a tangible contribution to a marriage. Looking to the tangible contributions prevents entitlement to appreciated property due to the mere existence of the relationship. Second, we look at whether the appreciation of the property is attributed to fortuitous circumstances or the efforts of the parties. Third, we look to the length of the marriage.
> In addition to the factors given special emphasis, we look to the statutory factors including the age and physical and emotional health of the parties, the earning capacity of each party, and the economic circumstances of the parties. The critical inquiry is always whether the distribution is equitable in the particular circumstances.

*In re Marriage of Grady-Woods*, 577 N.W.2d 851, 852–53 (Iowa Ct. App. 1998) (citations omitted). In light of Maryann's contributions to the family in the home, the length of the marriage (seventeen years), and the age and earning capacity of the parties, we conclude the district court's decision to award Maryann one-half of the marital appreciation of John's premarital retirement accounts was equitable in this case.

**IV. Spousal Support.**

Next, John asserts the award of spousal support, $1500 per month for ten years or until Maryann receives social security benefits, is inequitable as to amount and duration. He claims Maryann, with her education and work experience, is intentionally underemployed selling real estate and her income in the year preceding the dissolution reflected she made only one sale. He claims it is unreasonable and unfair for Maryann to be permitted to remain underemployed in a career, that while it may be enjoyable to her, has not shown any signs of success in nearly nine years, while he is ordered to subsidize her income.

The award of spousal support is determined based on each case's particular circumstances and precedent is of little value. *Gust*, 858 N.W.2d at 408. The duration of the marriage and the earning capabilities of the spouses, as opposed to their actual income, are important factors that must be considered. *Id.* at 410–11. We also consider the ability to pay, though we do not employ a mathematical formula to determine the amount or duration of the support. *Id.* at 411–12.

In this case, as the district court pointed out, the parties have greatly disparate earning capabilities. John earned a salary of $97,850 in the year

preceding the dissolution, along with a $21,000 bonus. While there was evidence that indicated the bonus, based in part on John's performance and in part on the company's performance, may not be as high every year, John still earns between three and four times what Maryann is capable of earning.[2] The court noted Maryann's decision to make the family life a priority during the marriage has lessened her earning capacity. Maryann does possess a master's degree in public administration; however, because of "the time that has elapsed since she last worked in a field related to that master's degree, the degree does not significantly enhance her earning capability." We conclude the court's award of $1500 in spousal support for ten years, or until Maryann receives social security benefits, whichever occurs first, is equitable, and we will not disturb it.

**V. Property Division—Marital Home.**

John also challenges the award of the marital home to Maryann in conjunction with the court's order that he pay one-half of the mortgage expense—$157.23—and maintenance costs on the house until it is sold. He claims Maryann gained exclusive use of the home though her disingenuous[3] filing of a domestic abuse petition. He claims he should have been awarded the marital home if Maryann cannot afford the mortgage and upkeep expenses or the

---

[2] The district court found Maryann had only earned an average of $10,000 per year in the past five years before the dissolution trial. However, the court imputed to her an annual income of $20,000 based on her education and work experience in order to calculate the child support.

[3] He asserts the domestic abuse petition was improper and in support of that assertion points to the district court's conclusion that there was not a history of domestic abuse in this case. There was no dispositive finding of whether or not the domestic abuse petition was frivolous, and the district court did also recite that the record contained evidence of incidents involving assaultive or offensive behavior against Maryann. Because we conclude the mortgage and maintenance payments are justified in order to preserve John's 50% interest in the equity of the home pending the younger child graduating from high school, we need not address the allegations of abuse in this case.

house should be immediately sold and the proceeds divided. He claims paying one-half of the mortgage and maintenance expenses for the marital home significantly increases his expenses while he is trying to secure a residence for himself and paying child and spousal support.

The court awarded the marital home to Maryann after concluding the physical care of the parties' children should be placed with her. She was allowed to stay in the house "[i]n order to provide for maximum stability for [the children]" and was allowed to remain in the house until the younger child graduates. The mortgage payments and maintenance costs are not being shared by John because Maryann cannot afford the house. Rather, John's payments toward the debt obligation and maintenance costs of the asset are to protect John's interest in the asset until it is sold—presumably in four years when the younger child graduates. The court granted John a 50% interest in the equity in the home as a tenant in common with Maryann. The mortgage payments are not substantial, and Maryann has few financial resources. It would be inequitable to require Maryann to exclusively shoulder the mortgage and maintenance expenses for the home for four years and then allow John to reap 50% of the equity when the house is sold if he did not continue to share in the obligations associated with that asset.

## VI. Attorney Fees.

*A. Trial Attorney Fees.* Finally, John claims the district court abused its discretion in ordering him to pay $5750 toward Maryann's trial attorney fees. We review the district court's decision to award attorney fees for abuse of discretion. *In re Marriage of Michael*, 839 N.W.2d 630, 635 (Iowa 2013). "Whether attorney

fees should be awarded depends on the respective abilities of the parties to pay." *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). In light of the parties' earning capacities, we find no abuse of discretion in the district court's award of trial attorney fees.

*B. Appellate Attorney Fees.* Maryann requests an award of appellate attorney fees. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion. In determining whether to award appellate attorney fees, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). We also consider whether a party was obligated to defend the district court's decision. *Berning*, 745 N.W.2d at 94. Upon our consideration of these factors, we award Maryann $3000 in appellate attorney fees.

**AFFIRMED.**