# IN THE COURT OF APPEALS OF IOWA

No. 20-0692
Filed March 3, 2021

IN RE THE MARRIAGE OF TRACEY ANN NORMAN
AND TEDD AARON NORMAN

Upon the Petition of
**TRACEY ANN NORMAN,**
        Petitioner-Appellant,

**And Concerning**
**TEDD AARON NORMAN,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan,

Judge.

        Tracey Norman appeals the property and spousal support provisions of the

district court's dissolution decree. **AFFIRMED.**

        Ryan J. Baumgartner of Cashatt Warren Family Law, P.C., Des Moines, for

appellant.

        Joseph G. Bertogli, Des Moines, for appellee.

        Considered by Bower, C.J., and Vaitheswaran and Greer, JJ.

**VAITHESWARAN, Judge.**

Tracey and Tedd Norman married in 1995 and divorced in 2020. On appeal, Tracey challenges the property and spousal support provisions of the dissolution decree.

## I.    *Property Division*

The parties agreed to a division of many of their assets. They disagreed on the proper allocation of a Roth IRA in Tedd's name. The IRA account contained an $80,000 workers' compensation settlement Tedd received before the marriage as well as $14,464 rolled over from a 401(k) account Tedd had during the marriage.

The district court included both sums in the marital estate, but gave Tedd "full credit for the initial investment [of $80,000] and its appreciated value." The court also assigned him "the amount of $39,371," representing "the appreciated value of the investment of $14,464 in 2006."

Tracey argues "[t]he district court erred in failing to equitably divide [Tedd's] Roth IRA, which resulted in a disproportionate property equalization payment." She seeks an equal division of "the entire Roth IRA and interest" or, in the alternative, an equal division of "the interest accrued on the Roth IRA."

"[P]roperty included in the divisible estate includes not only property acquired during the marriage by one or both parties, but property owned prior to the marriage." *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). "The trial court may place different degrees of weight on the premarital status of property, but it may not separate the asset from the divisible estate and automatically award it to the spouse that owned the property prior to the marriage." *Id.* The court may equitably divide the appreciation of premarital assets. *See In*

*re Marriage of Fennelly*, 737 N.W.2d 97, 104 (Iowa 2007). "When determining an equitable division of assets which were owned by one party before the marriage and which appreciated in value during the marriage, we consider the tangible contributions of each spouse, whether the appreciation was fortuitous or due to the efforts of the parties, and the length of the marriage." *In re Marriage of Amling*, 2014 WL 4230222, at *5 (Iowa Ct. App. Aug. 27, 2014) (citing *In re Marriage of Grady-Woods*, 577 N.W.2d 851, 852–53 (Iowa Ct. App. 1998)).

The parties agreed the value of the Roth IRA at the time of trial was $251,683. The appreciation in the account was largely fortuitous. While Tracey suggests otherwise, citing Tedd's decision to hire a professional to oversee the account, she essentially concedes neither she nor Tedd were personally responsible for the increase in value. Notably, the court handled Tracey's assets in the same manner, assigning her non-pension employer accounts and the fortuitous appreciation in those accounts to her.

The court also considered the manner in which Tedd handled the funds in the account. Unlike a second $30,000 workers' compensation award that he used "to satisfy the mortgage on the home," Tedd separated the Roth IRA funds from other money and did not withdraw any portion for marital expenses. In light of the differential treatment of the two workers' compensation awards, the court only assigned the Roth funds to him. Similarly, the court did not give Tedd credit for a $59,938.07 down payment he made on the marital home twenty-two years before trial, notwithstanding Tedd's assertion that the majority of those funds came from the sale of a home he purchased before the marriage.

Finally, Tracey received a significantly larger share of assets than Tedd, even with the court's assignment of the Roth IRA funds to him, as reflected in the court's comprehensive chart attached to the dissolution decree. To equalize the distribution after the lengthy marriage, the court ordered Tracey to pay Tedd $100,000. On our de novo review, we conclude the district court acted equitably in including all the Roth IRA funds in the divisible estate and in assigning Tedd the original deposits together with the appreciation.

## II.    *Spousal Support*

Tedd, who was disabled at the time of trial, sought spousal support of $1500 per month from Tracey. The district court awarded him traditional spousal support of $750 per month until the death of either party or Tedd's remarriage. *See In re Marriage of Hettinga*, 574 N.W.2d 920, 922 (Iowa Ct. App. 1997) ("Traditional or permanent alimony is usually payable for life or for so long as the dependent is incapable of self-support."). The court based the award on "the length of the marriage, [Tracey's] earning capacity presently and in the future, [Tedd's] disability and his ongoing medical conditions which makes his earning capacity virtually nonexistent, the respective ages of the parties, their respective educations, the court's distribution of the marital property, the equalization payment ordered, and their respective living expenses."

Tracey points to a variety of factors that, in her view, render the spousal support award inequitable. We review the record de novo but "we accord the trial court considerable latitude" and "will disturb the trial court's order 'only when there has been a failure to do equity.'" *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015) (quoting *In re Marriage of Olson*, 705 N.W.2d 312, 315 (Iowa 2005)).

Tracey was forty-nine and Tedd was fifty-eight years old at the time of trial. The parties were married for twenty-four years. At the time of trial, Tedd's only source of income was social security disability benefits of $2250 per month. Tracey earned $67,000 per year and was in good health, with a number of earning years ahead of her. The district court considered her expenses and other funds that would defray her expenses before determining she had the ability to pay spousal support. While Tracey faults the court for considering her gross rather than net monthly income, her own calculation of the parties' respective adjusted net monthly incomes for child support purposes reflects that she had double the net income as Tedd. The earnings disparity together with Tedd's inability to undertake gainful employment supported the spousal support award. *See In re Marriage of Anliker*, 694 N.W.2d 535, 541–42 (Iowa 2005) (affirming an award of $1250 per month in traditional spousal support where the parties were married twenty years, the recipient spouse was in poor health, unable to work, and received social security disability benefits, and the payor spouse was in good health and had an earning capacity of $50,000); *Hettinga*, 574 N.W.2d at 922 (noting payee's "disability render[ed] her incapable of self-support now or in the future" and made "[h]er need for alimony . . . absolute" and finding the payor had the ability to pay based on his receipt of passive rental income); *In re Marriage of DeCook*, No. 11-1371, 2012 WL 2122486, at *2 (Iowa Ct. App. June 13, 2012) (modifying an award of rehabilitative spousal support to an award of traditional spousal support based on "the difference in the spouses' earning capacities, the length of the marriage, and . . . [the recipient's] health problems"); *In re Marriage of Aronson*, No. 05-0373, 2006 WL 334250, at *4 (Iowa Ct. App. Feb. 15, 2006) (increasing an award of

spousal support to a spouse who was "permanently disabled" and received only "social security and other government benefits," where the payor earned "over $50,000 per year and was "in good health," and "apparently [would] continue to have a capacity to earn this much or more into the foreseeable future"). We conclude the district court acted equitably in awarding Tedd traditional spousal support of $750 per month.

### III.    Appellate Attorney Fees

Tedd seeks an order requiring Tracey to pay his appellate attorney fees. Although he prevailed on both issues, we conclude the equalization payment he received will allow him to bear his own appellate fees. *See In re Marriage of Hitchcock*, 309 N.W.2d 432, 438 (Iowa 1981); *In re Marriage of Sterner*, No. 18-0409, 2019 WL 1057304, at *9 (Iowa Ct. App. Mar. 6, 2019).

We affirm the property and spousal support provisions of the dissolution decree.

**AFFIRMED.**