# IN THE COURT OF APPEALS OF IOWA

————————

No. 25-0725
Filed February 25, 2026

————————

**In re the Marriage of Jennifer Melissa Mejia-Kingery and Sterling Eugene Kingery**

Upon the Petition of
**Jennifer Melissa Mejia-Kingery, n/k/a Jennifer Melissa Thompson,**
Petitioner–Appellee,

And Concerning
**Sterling Eugene Kingery,**
Respondent–Appellant.

————————

Appeal from the Iowa District Court for Scott County,
The Honorable Stuart P. Werling, Judge.

————————

**AFFIRMED AS MODIFIED**

————————

Lynne C. Jasper, Bettendorf, attorney for appellant.

Stephen T. Fieweger, Davenport, attorney for appellee.

————————

Considered without oral argument
by Greer, P.J., and Schumacher and Ahlers, JJ.
Opinion by Greer, P.J.

**GREER, Presiding Judge.**

Sterling Kingery appeals from the economic provisions of the dissolution decree dividing the equity in the marital residence he shared with Jennifer Mejia-Kingery. He argues the district court erred (1) by only awarding him $1,000 for his share of the marital residence, despite appreciation in the marital residence aided by his sweat equity, and (2) in calculating the marital home equity. He also requests that we order Jennifer to pay his appellate legal fees and costs incurred in connection with this appeal. Jennifer asks that we affirm the dissolution decree and asserts that Sterling is not entitled to a larger share of the equity in the marital residence, which she brought into the marriage, given that this was a short-term marriage. Further, Jennifer maintains that Sterling is not entitled to recovery of his appellate legal fees and costs in connection with this appeal.

On our de novo review, we modify the district court's property division equalization payment award to Sterling. We find the district court's determination of the home's equity was supported by the minimal evidence of value presented. And while the marriage was of short duration,[1] after giving Sterling credit for his financial contributions involving the marital residence, we find a more equitable payment would be $5,500. Finally, we decline to award Sterling his appellate legal fees and costs.

---

[1] The district court found "this to be a short-term marriage of only about three years," but the marriage legally lasted from June 24, 2020, until the dissolution order was entered on March 31, 2025. The parties did live separately for six months in 2022 and then permanently separated in June 2024.

## I. Background Facts and Proceedings.

Sterling and Jennifer married on June 24, 2020.[2] Prior to their marriage, Sterling and Jennifer each purchased and owned their own respective homes. Jennifer bought her home in November 2017. Around November 2018, Sterling sold his residence and moved in with Jennifer.[3] Sterling resided in the marital home for ten months before he proposed to Jennifer around September 2019. While Sterling lived in the marital home, he paid $650 of the $1,200 monthly mortgage payment to Jennifer as rent,[4] and he paid half of the utility bills. At the time, Jennifer worked as a physical therapist and had done so for the last twenty-five to twenty-six years. Sterling was also employed; he worked as a school counselor and had done so for the last twenty-three to twenty-four years.

On September 23, 2019, Jennifer signed a quitclaim deed placing Sterling's name on the deed of the marital residence. The parties married on June 24, 2020. On January 29, 2024, Jennifer petitioned to dissolve the marriage. With no evidence to the contrary, the district court assumed that the parties had "relatively equal middle-class estates when they married."

At the March 31, 2025 trial, the parties stipulated that each of them was entitled to the assets that they held solely in their name, including

---

[2] Both parties were in their fifties during the marriage, and no children were impacted by this dissolution of marriage.

[3] Sterling testified he offered to contribute $6,500 he received from his home sale towards the marital home, but that Jennifer said "[s]he did not want the money."

[4] This amount also went to pay the real estate taxes and the home insurance premium.

retirement accounts, bank accounts, and vehicles. Only the division of the marital home equity was disputed.

The district court determined the value of Jennifer's home at the time the quitclaim deed was signed and as of their marriage was $250,000. Accepting the April 2024 real estate appraisal provided at trial, the district court found the current fair market value of the marital home was $268,500. Based on these figures, the district court subtracted the value of the home at the time of the quitclaim deed and the date of their marriage from the fair market value of the home at the time of trial, finding that there was about $18,500 of equity in the house to consider.

The parties stipulated that Jennifer should be given credit for the $7,500 downpayment she paid at the time of purchase, further reducing the equity to $11,000 available for a distribution. The court relied on the short duration of the marriage to determine that Sterling was only entitled to a small portion of the equity in the home. Thus, the district court awarded Sterling $1,000 of the $11,000 equity in the marital home. Sterling appeals.

## II. Standard of Review.

"An appeal regarding the dissolution of marriage is an equitable proceeding." *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015); *see* Iowa Code § 598.3 (2024). We review equitable proceedings de novo. *Gust*, 858 N.W.2d at 406. "We give weight to the findings of the district court, particularly concerning the credibility of witnesses," but we are not bound by them. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). A district court's ruling will not be disturbed unless the ruling fails to do equity. *Id.*

### III. Analysis.

**A. Property Division.** Sterling challenges the district court's property division. "Under our statutory distribution scheme, the first task in dividing property is to determine the property subject to division." *In re Marriage of Fennelly & Breckenfelder*, 737 N.W.2d 97, 102 (Iowa 2007). "The second task is to divide this property in an equitable manner according to the enumerated factors in section 598.21 of the Iowa Code." *Id.*

An equitable division does not equate to an equal division. *In re Marriage of Hoak*, 364 N.W.2d 185, 194 (Iowa 1985). "Although an equal division is not required, it is generally recognized that equality is often most equitable." *In re Marriage of Rhinehart*, 704 N.W.2d 677, 683 (Iowa 2005).

Here, no one disputes the award of the home to Jennifer, although Sterling had a premarital interest in the home because Jennifer executed a quitclaim deed giving him "all right, title, interest, estate, claim and demand" in the home nearly a year after Sterling moved in and ten months before they married. Sterling argues the district court incorrectly determined the value of the home at the time of the quitclaim deed and their marriage was $250,000. Additionally, Sterling argues that the division of the equity in the home is inequitable due to the appreciation in the marital home and his sweat equity. We consider each argument in turn.

1. *Valuation of the home.* On appeal, we defer to the district court's valuation of assets included in the marital estate when they are in the range of permissible evidence. *McDermott*, 827 N.W.2d at 679. The district court determined the relative value of the home at the time of the marriage was around $250,000. Admittedly, the evidence provided was scant. But, Jennifer testified her opinion of the home's $250,000 market value was based

on two sources: (1) an online real estate platform's estimated fair market value of $250,000 of the house at the time of the quitclaim deed, and (2) the $255,000 purchase price her neighbor, with a similarly sized house in the neighborhood, received from a sale. Without an appraisal to rebut Jennifer's testimony, Sterling first testified that he had "nothing to counter [Jennifer's] testimony that [the home] was worth $250,000 at the time in which the quitclaim deed was executed." After a break at the trial, Sterling offered documentation of the 2021 real estate tax assessment assessing the home for real estate tax purposes at $173,300. He argued it was nonsensical that the home, by Jennifer's testimony, was worth $250,000 in 2019 and then went down in value as the tax assessment showed. On this issue, the court found Jennifer more credible.

The district court also concluded that the fair market value of the home at the time of the trial was $268,500 based on an appraisal. Accordingly, the court concluded that there was $18,500 of equity in the marital home on the date of the filing of the petition. This $18,500 figure is what the district court relied on in dividing the amount of equity between Sterling and Jennifer. There is no dispute that Jennifer should be given credit for the $7,500 she paid as a downpayment at closing, further reducing the equity from $18,500 to $11,000 available for distribution.

We find that this is within the range of permissible evidence and refuse to disturb the district court's valuation of the marital home and determination of the equity in the marital home.

2. *Division of the marital home equity.* Noting that they "split everything down the middle" as it related to the marital home expenses and mortgage and his contributions included hands-on improvements he made to the home, Sterling challenges the district court's division of the equity in the

6

marital property as inequitable. Sterling asked the court to award him an equal division of the equity in the marital home after Jennifer is credited her deposit. Sterling contends an equal division of the remaining equity in the marital home is equitable based on the appreciation of the house, as well as his financial contributions and the sweat equity he contributed to the home. Jennifer contends nothing Sterling did by way of manual labor increased the value of the home.

We consider the factors found in Iowa Code section 598.21(5) when dividing the parties' property in dissolution of marriage proceedings.[5] We

---

[5] Iowa Code section 598.21(5) provides:

The court shall divide all property, except inherited property or gifts received or expected by one party, equitably between the parties after considering all of the following:

a. The length of the marriage.

b. The property brought to the marriage by each party.

c. The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.

d. The age and physical and emotional health of the parties.

e. The contribution by one party to the education, training, or increased earning power of the other.

f. The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children, and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

. . . .

are to consider property owned prior to the marriage when dividing the parties' assets. *In re Marriage of Hansen*, 886 N.W.2d 868, 872 (Iowa Ct. App. 2016) (noting property brought into the marriage is one of many factors to weigh in the equitable division of property).

Sterling argues that the district court did not accurately take into consideration the appreciation in the value of the home that occurred during the marriage. If a court awards all of the premarital assets to the spouse that brought those assets to the marriage, under certain circumstances, it may award the other spouse a portion of the appreciation in value of those assets. *See In re Marriage of Grady-Woods*, 577 N.W.2d 851, 853 (Iowa Ct. App. 1998). Sterling notes that "appreciation in the value of assets during the marriage is a marital asset." *Hansen*, 886 N.W.2d at 873. He further contends that it does not matter "*how* each asset appreciated—fortuitously versus laboriously—when the parties have been married for nearly fifteen years."

h. The amount and duration of an order granting support payments to either party pursuant to section 598.21A and whether the property division should be in lieu of such payments.

i. Other economic circumstances of each party, including pension benefits, vested or unvested. Future interests may be considered, but expectancies or interests arising from inherited or gifted property created under a will or other instrument under which the trustee, trustor, trust protector, or owner has the power to remove the party in question as a beneficiary, shall not be considered.

j. The tax consequences to each party.

k. Any written agreement made by the parties concerning property distribution.

l. The provisions of an antenuptial agreement.

m. Other factors the court may determine to be relevant in an individual case.

*Fennelly*, 737 N.W.2d at 104 (emphasis in original). But here, the marriage tenure was short.

Sterling differentiates the treatment of the equity of the marital residence at issue with that in *Hansen*. In *Hansen*, the parties were married four years. *Hansen*, 886 N.W.2d at 873. After considering the length of the marriage, the premarital nature of the home, and the lack of appreciation of value, a panel of our court set aside the equalization payment as inequitable. *Id.* (contesting the consideration of the premarital asset's net equity). There, "because the parties' marriage was short, the family home was [the husband's] premarital asset, the asset did not appreciate in value, the parties did not enter the marriage with an equal value of assets, and there was no overriding contribution or sacrifice by either party," an equal division of the net assets was not equitable. *Id.* (noting the husband made all of the payments towards the premarital home, but the wife contributed by maintaining, decorating, and landscaping the property). Although lack of appreciation was a consideration, the court in *Hansen* noted that the wife "would have a better claim for a portion of net equity of the family home if this had been a long-term marriage." *Id.* at 872.

While the facts here resemble those in *Hansen*, Sterling does raise several factors that warrant consideration. The main focus of the district court centered on the parties' short-term marriage and that Jennifer purchased the marital home prior to the marriage. But the district court did not address whether Sterling should have any credit for the appreciation of value of the real estate or for his years of splitting the mortgage payments and the basic expense of operation. Further, the district court did not address any "sweat equity" arguments advanced by Sterling.

From November 2019 forward, except for the months he moved out of the home, Sterling contends he financially contributed to the home by paying one-half of all the expenses for the home, including the mortgage payment and the utilities. Without producing any receipts, Sterling testified he contributed to the appreciation of the home through his own labor by manually putting on a new roof, widening the driveway, extending the parking pad, replacing the underpinning on the deck, replacing the entire surface of the deck, and remodeling the garage. Many of these updates were considered in the real estate appraisal. While our supreme court in *Fennelly* de-emphasized the fortuitous or laborious nature of the appreciation in long-term marriage, *see* 737 N.W.2d at 104, we do not have that situation here. And while we cannot say that Sterling's efforts made a direct contribution to the net equity, we would note that his labor is a factor in the overall contribution he made to this marriage. "An equitable property division of the appreciated value of the property should be a function of the tangible contributions of each party . . . ." *In re Marriage of Hass*, 538 N.W.2d 889, 893 (Iowa Ct. App. 1995).

Sterling made several contributions through his labor in maintaining the home and in the marriage, the ten months of payments he made towards the home after 2018 when he first moved in, the payments he made towards the home after the transfer of ownership for about nine months, and the forty-two months[6] of payments he made towards the home during the marriage before the final separation. When we factor in those contributions, we do not find that it was equitable to only award Sterling a minimal part of

---

[6] This number considers the six months in 2022 that Sterling paid nothing towards the home costs and that after June 2024 he was no longer living in or contributing to the household. The district court noted that the date of final separation was in June 2023, but the testimony reflected a June 2024 date.

the equity that has accrued since the home was purchased in 2017. Under these circumstances, we find that it is equitable to award him $5,500 of the $11,000 equity in the marital home.

**B. Appellate Attorney Fees.** Sterling requests appellate attorney fees and costs incurred by him in connection with this appeal. "[W]e have discretion to award appellate attorney fees." *In re Marriage of Samuels*, 15 N.W.3d 801, 808 (Iowa Ct. App. 2024). "When deciding whether to award appellate attorney fees, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (cleaned up). Having considered those factors, we deny Sterling's request.

### IV. Conclusion.

We modify the decree of dissolution of marriage and order judgment against Jennifer and in favor of Sterling in the amount of $5,500, with credit for any payments made on the original award. We deny Sterling's request for attorney fees.

**AFFIRMED AS MODIFIED.**